UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORD ABBETT INVESTMENT TRUST, et al.<br><br>                Plaintiffs,<br><br>          v.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.<br><br>                Defendants. | No. 3:17-cv-6365-MAS-LHG<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Motion Day: April 2, 2018** |

**PRICEWATERHOUSECOOPERS LLP'S OMNIBUS MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTIONS TO DISMISS THREE COMPLAINTS**

Dated:   December 6, 2017

KING & SPALDING LLP

James J. Capra, Jr. (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

CHIESA SHAHINIAN & GIANTOMASI PC

A. Ross Pearlson
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

*Attorneys for Defendant
PricewaterhouseCoopers LLP*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT................................................................................1

FACTUAL BACKGROUND ................................................................................3

      A.    PwC's Audit Report ....................................................3

      B.    Valeant's Restatement .................................................3

      C.    Plaintiffs' Allegations Concerning PwC's 2014 Audit.....................5

      D.    Plaintiffs' Claims ......................................................6

PLEADING STANDARDS................................................................................7

ARGUMENT ................................................................................8

  I.    The Court should dismiss the 10(b) securities fraud claim because
Plaintiffs do not plead a strong inference of PwC's scienter. .........................8

      A.    The heightened pleading requirements of the PSLRA
apply to 10(b) claims. ................................................8

      B.    Pleading an independent auditor's scienter is a demanding
task. ..................................................................9

      C.    Plaintiffs' allegations do not give rise to a strong inference
of PwC's scienter. ....................................................10

      D.    Plaintiffs' allegations give rise to more compelling
nonfraudulent inferences.................................................13

  II.    The Court should dismiss the common law fraud claim because
Plaintiffs fail to plead PwC's fraudulent intent and because
SLUSA precludes it. ..................................................................14

  III.    The Court should dismiss the New Jersey RICO claims because
Plaintiffs fail to plead PwC's knowing participation in an
enterprise and other essential elements.........................................15

      A.    The RICO claims fail because they are implausible and
conclusory. ..........................................................16

      B.    Plaintiffs do not plead PwC's knowing participation in an
enterprise or conspiracy. ...............................................16

i

C.      The Court should dismiss the New Jersey RICO claims because Plaintiffs fail to plead other essential elements as to PwC........................................................................................18

    1.      The primary RICO claim (N.J. Stat. Ann. 2C:41-2(c)) fails because Plaintiffs do not plead a pattern of racketeering activity by PwC.............................................18

    2.      The Court should dismiss the RICO conspiracy claim because Plaintiffs do not plead the existence of any unlawful agreement that included PwC......................19

    3.      The Court should dismiss the aiding and abetting RICO claim because Plaintiffs do not plead that PwC's assistance was substantial...........................................20

D.      Plaintiffs fail to plead a RICO enterprise or a RICO injury..............21

CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................7, 16

*Athale v. SinoTech Energy Ltd.*,
  2014 WL 687218 (S.D.N.Y. Feb. 21, 2014) ...........................................9

*Automotive Fin. Corp. v. DZ Motors, LLC*,
  2017 WL 3176275 (D.N.J. July 26, 2017).............................15, 16, 19

*Barnard v. Verizon Commc'ns, Inc.*,
  451 F. App'x 80 (3d Cir. 2011) ...............................................................15

*Cafaro v. HMC Intern., LLC*,
  2009 WL 1622825 (D.N.J. June 10, 2009) .....................................17, 20

*Capers v. FedEx Ground*,
  2012 WL 2050247 (D.N.J. June 6, 2012) ...............................................20

*Coastal Grp., Inc. v. Westholme Partners*,
  1996 WL 33545605 (D.N.J. Oct. 3, 1996)...............................................17

*Construcciones Haus Sociedad v. Kennedy Funding Inc.*,
  2008 WL 1882857 (D.N.J. Apr. 24, 2008)...............................................16

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
  102 F. Supp. 2d 237 (D.N.J. 2000) ...........................................................18

*Fain v. U.S.A. Techs., Inc.*,
  2017 WL 3727435 (3d Cir. Aug. 30, 2017) ...............................8, 12, 14

*Gennari v. Weichert Co. Realtors*,
  691 A.2d 350 (N.J. 1997)...........................................................................14

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) .......................................................................10

*Hills v. Bank of Am.*,
  2014 WL 4113131 (D.N.J. June 30, 2014) ...............................................15

*In re Advanced Battery Techs., Inc.*,
  781 F. 3d 638 (2d Cir. 2015) ...............................................9, 10, 12, 13

*In re Amarin Corp. PLC Sec. Litig.*,
    689 Fed. App'x 124 (3d Cir. 2017) ...................................................................11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ..................................................................3, 9

*In re Doral Fin. Corp. Sec. Litig.*,
    563 F. Supp. 2d 461 (S.D.N.Y. 2008) ...........................................................14

*In re Scottish Re Grp. Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...........................................................13

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ..................................................................9, 13

*Kennilworth Partners L.P. v. Cendant Corp.*,
    59 F. Supp. 2d 417 (D.N.J. 1999) .................................................................7

*Key Equity Investors, Inc. v. Sel-Leb Mktg., Inc.*,
    246 Fed. App'x 780 (3d Cir. 2007) ...............................................................9

*Klein v. Autek Corp.*,
    147 F. App'x 270 (3d Cir. 2005) ................................................................10

*Mayo, Lynch & Assocs. v. Pollack*,
    799 A.2d 12 (N.J. App. Div. 2002) ...............................................................18

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    487 Fed. App'x 636 (2d Cir. 2012) ...............................................................20

*Miller v. P.G. Lewis & Assoc.*,
    2007 WL 316446 (D.N.J. Jan. 30, 2007) ..................................................18, 20

*Nappier v. PricewaterhouseCoopers LLP*,
    227 F. Supp. 2d 263 (D.N.J. 2002) .............................................................9, 11

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) .......................................................................9

*Ricale Assocs., LLC v. McGregor*,
    2015 WL 5781063 (D.N.J. Sept. 30, 2015) .................................................18–19

*Ross v. Celtron Int'l, Inc.*,
    494 F. Supp. 2d 288 (D.N.J. 2007) ..............................................................19

*Rothberg v. Marger*,
    2013 WL 1314699 (D.N.J. Mar. 28, 2013) .....................................................15

*Silverstein v. Percudani*,
    422 F. Supp. 2d 468 (M.D. Pa. 2006) ...................................................................18

*Smith v. Jones, Gregg, Creehan & Gerace LLP*,
    2008  WL 5129916 (W.D. Pa. Dec. 5, 2008) .......................................................20

*State v. Ball*,
    661 A.2d 251 (N.J. 1995) ...........................................................................17, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................8, 9, 13

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 Fed. App'x. 82 (3d Cir. 2015) .......................................................................7

*The Knit With v. Knitting Fever, Inc.*,
    625 Fed. App'x 27 (3d Cir. Sept. 2, 2015) ........................................................17

*Warren v. Fisher*,
    2011 WL 4073753 (D.N.J. Sept. 12, 2011)........................................................20

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ..............................................................................8

**Statutes**

N.J. Stat. Ann. 2C:41-1 ...................................................................................18–19

N.J. Stat. Ann. 2C:41-2 ...................................................................................17–20

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) .................................1, 8

Securities and Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) ........................ *passim*

Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb .................................15

**Other Authorities**

17 C.F.R. § 210.2-01 ..............................................................................................7

17 C.F.R. § 210.4-02 ............................................................................................12

Fed. R. Civ. P. 8....................................................................................................1

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1

**Miscellaneous**

Financial Accounting Standards Board, Concept No. 8 ...............................................12

SEC Staff Accounting Bulletin 99, 64 Fed. Reg. 45,150 (Aug. 12, 1999) ....................................12

Defendant PricewaterhouseCoopers LLP ("PwC") moves, in accordance with Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a), to dismiss all claims against it in three actions alleging fraud and RICO violations: Lord Abbett (17-cv-6365); Boeing (17-cv-7636); and PERS (17-cv-7625).  The pleadings in these cases are largely substantively identical.[1]

## PRELIMINARY STATEMENT

PwC is the independent registered public accounting firm of Valeant Pharmaceuticals International, Inc. ("Valeant" or the "Company").  This Court denied PwC's motion to dismiss a Section 11 claim by Class Plaintiffs (15-cv-7658), who expressly disclaimed allegations of any PwC fraud, scienter, or recklessness.  These new Complaints are dramatically different.  All three assert exclusively fraud-based claims, which the Court has ***not previously*** considered as to PwC.

The primary claim in each case is federal securities fraud.  Plaintiffs allege that PwC violated Section 10(b) of the 1934 Exchange Act by providing a knowingly or recklessly false audit report on Valeant's 2014 financial statements and internal control over financial reporting. LA Compl. ¶¶ 143, 247.  The heightened pleading requirements of the Private Securities Litigation Reform Act apply.  Courts recognize that it is an especially "demanding" task to plead an auditor's scienter: it requires particularized allegations raising a strong inference that the auditor's conduct approximated an actual intent to aid in the fraud being perpetrated by the company.  As a result, Section 10(b) claims against auditors regularly fail even when a court sustains the same claim against a company or its management.

Plaintiffs do not state a claim against PwC for securities fraud.  They do not plead any particularized allegations that show recklessness approximating an actual intent to aid in any

---

[1] Unless otherwise noted, PwC refers to the Lord Abbett Complaint ("LA Compl.") throughout this Omnibus Memorandum.  PwC is filing the same Memorandum and accompanying Declaration in all three cases, with only a different caption.  Appendix A to the Memorandum cross references the cited allegations of the Lord Abbett Complaint to the other two pleadings.

fraud.  Moreover, Plaintiffs' few factual allegations give rise to a more compelling, nonculpable inference.  Plaintiffs feature the investigative finding that two of Valeant's former senior officers provided PwC with "incorrect information" in its audit.  LA Compl. ¶ 337.  That finding supports the inference that PwC was misled by the Company's management.  Other allegations support, at most, a claim that PwC made an ordinary mistake—not that it was complicit in a fraud.

Plaintiffs also assert common law fraud in two cases (Lord Abbett and Boeing) and New Jersey RICO claims grounded in fraud in all three.  LA Compl. ¶ 73–74, 408, 425, 429, 460. These claims also rely on PwC's audit report on Valeant's 2014 financial statements.  That report is the only claimed participation by PwC in an alleged multi-year racketeering scheme that supposedly used a clandestine pharmacy network, illegal drug pricing, and fictitious accounting to artificially inflate the prices of Valeant's securities.  *Id.* ¶¶ 1, 41, 77.  Rule 9(b) applies.  The Court should dismiss these claims because Plaintiffs do not plead a basis for PwC's knowing participation in any fraud or RICO scheme.  As set forth below, PwC also incorporates arguments from Valeant's Omnibus Memorandum with respect to additional defects in these claims.

Securities fraud and racketeering are very serious charges.  They should not be filed lightly.  For that reason, Congress and the courts unambiguously require a plaintiff to support such claims, even at the pleading stage, with plausible, particularized, and compelling allegations to survive dismissal.  Plaintiffs do not come close to meeting that high bar, nor could they.  The Complaints contain no specifics of PwC's supposed bad acts, no motive for PwC to defraud Valeant's investors, and no theory as to why PwC would sacrifice its reputation as an auditor to engage in criminal activity.  Instead, Plaintiffs rely on mere formulaic recitations of the elements of their claims, or allegations that amount to, at most, purported negligence.  For this and other reasons set forth below, the Court should dismiss the claims against PwC with prejudice.

Case 3:17-cv-06365-MAS-LHG   Document 59-1   Filed 12/06/17   Page 10 of 32 PageID: 647

## **FACTUAL BACKGROUND**

The following background—drawn from Plaintiffs' allegations and the documents referenced in the Complaints—is relevant to the claims against PwC.[2]

### **A.  PwC's Audit Report**

All of the claims against PwC relate to its audit report on Valeant's 2014 financial statements and internal controls, which was dated February 25, 2015, and included in Valeant's 2014 Annual Report on Form 10-K ("2014 10-K").  LA Compl. ¶ 244.  Valeant's management was responsible for the Company's financial statements and for maintaining effective internal controls.  2014 10-K, at F-2 (Capra Ex. 1).  PwC's report contained its opinions that Valeant's financial statements were fairly presented in material respects and that the Company's internal controls over financial reporting were effective.  LA Compl. ¶ 245.  Plaintiffs allege that PwC's opinions were "material misrepresentations."  *Id.* ¶ 247.  These allegations depend on Valeant's subsequent restatement of its 2014 financial statements, which the Company included in its 2015 10-K with an Explanatory Note about its basis for doing so ("Exp. Note").  *Id.* ¶¶ 305, 307.

### **B.  Valeant's Restatement**

The events leading to the restatement started to unfold seven months after PwC's audit. In October 2015, a California pharmacy, R&O, sued Valeant, disputing Valeant's demand that R&O owed it money; the demand related to products Valeant had shipped through Philidor, a pharmacy network Valeant used to distribute its products.  LA Compl. ¶¶ 110–11.  Two weeks later, based on information related to that lawsuit, an investigative reporting group (SIRF) and short-seller (Citron) accused Valeant of using pharmacy networks to inflate its revenue, among many other charges.  *Id.* ¶¶ 259, 266.

---

[2] These materials are attached to the Declaration of James J. Capra, Jr. and referred to as "Capra Ex. _".  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

On October 26, 2015, Valeant's Board established an ad hoc committee of independent directors to review these allegations. 2015 10-K (Apr. 29, 2016), Exp. Note (Capra Ex. 2). The Committee hired outside attorneys (Kirkland & Ellis) and forensic professionals to conduct an investigation, which lasted almost five months and involved "substantial" expense. *Id.* at 11 (Item 1A). In April 2016, as a result of information uncovered in that investigation, Valeant reduced its previously-reported revenue by $57.5 million out of total revenue of over $8 billion, or less than one percent. 2015 10-K at F-14 (Capra Ex. 2). Valeant restated its 2014 financial statements and recognized control weaknesses based on a finding that "the improper conduct" of two former officers "contributed to the misstatement." *Id.* at Exp. Note.

The restatement related to certain of Valeant's sales to Philidor. In December 2014, Valeant entered into an option agreement to acquire Philidor (the "Purchase Option Agreement"). LA Compl. ¶ 207. Leading up to that agreement, Valeant could, and did, recognize revenue on sales to Philidor on a sell-*in* basis, when it delivered products to Philidor in the normal course of business. *Id.* ¶ 216; 2015 10-K at Exp. Note (Capra Ex. 2). The Committee found, however, that certain sales during the second half of 2014 were outside the normal course of business because of "actions taken by the Company . . . in contemplation of the purchase option agreement." 2015 10-K at Exp. Note (Capra Ex. 2). Those actions included certain officers' placing an "emphasis on delivering product prior to the execution" of the agreement. *Id.* Based on this discovery, Valeant revised its accounting to recognize revenue on these sales at a later time, on a sell-*through* basis, when Philidor sold Valeant's products through to customers. LA Compl. ¶ 216.

Although the accounting for these sales changed, there is no allegation that the sales themselves did not occur, *e.g.*, that orders were not received or products were not actually shipped and paid for. Nor is there any allegation that PwC was aware of, or participated in, the

improper conduct.  On the contrary, Plaintiffs rely heavily on the Committee's investigation, which found:

> The improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, which resulted in the ***provision of incorrect information to*** the ARC [Audit and Risk Committee] and the Company's ***independent registered public accounting firm*** [*i.e.*, PwC], contributed to the misstatement of financial results.

2015 10-K at Exp. Note (Capra Ex. 2) (emphases added); *see also* LA Compl. ¶¶ 337, 347.

With the benefit of this hindsight, Plaintiffs claim that Valeant overstated revenue on these sales and that Valeant should have disclosed the Purchase Option Agreement in its financial statements because it was a "material acquisition" of Philidor.  LA Compl. ¶ 142.

### C.  Plaintiffs' Allegations Concerning PwC's 2014 Audit

PwC finished its audit of the 2014 financial statements seven months before the information came to light that prompted the Committee's investigation and a year before the investigation concluded.  *Id.* ¶ 244; 2015 10-K at Exp. Note (Capra Ex. 2).  Public Company Accounting Oversight Board ("PCAOB") standards governed PwC's audit.  LA Compl. ¶¶ 135–48.  Those standards make clear that an audit is not a forensic exercise like the Company's investigation.[3]

Plaintiffs focus on Valeant's mistiming of revenue relating to sales to Philidor and management's decision not to disclose the Purchase Option Agreement as a "material acquisition" of Philidor.  LA Compl. ¶ 142.  Plaintiffs concede that PwC performed "normal

---

[3] An auditor addresses whether financial statements are fairly presented in material respects by examining, on a test basis, evidence supporting the amounts and disclosures in the company's financial statements.  AU 508.07 & .08 (Capra Ex. 3).  Given these and other limitations, an audit provides "reasonable, but not absolute, assurance" on whether financial statements are fairly presented and controls effective.  AU 110.02 (Capra Ex. 4).  "AU" refers to PCAOB interim standards, which are the AICPA's generally accepted auditing standards ("GAAS") that the PCAOB initially adopted, while the PCAOB's final standards are referred to as "AS."

audit procedures" relating to Valeant's transactions with Philidor.  *Id.* ¶ 246.  But they go on to

say that PwC had "the responsibility to inquire further."  *Id.* ¶ 143.  Plaintiffs speculate that

"PwC either failed to inquire further into the Philidor relationship, thus failing to conduct its

audit in accordance with [PCAOB standards], or PwC *did* inquire further, and still approved

Valeant's accounting and certified its internal controls, in violation of accounting standards."  *Id.*

¶ 143.[4]  Plaintiffs label PwC's report as "knowingly or recklessly false" (*id.*), but their

allegations either sound in negligence, which is inconsistent with a theory that PwC engaged in

deliberate wrongdoing, or they are legal conclusions entitled to no weight.

### D.  **Plaintiffs' Claims**

The Lord Abbett Plaintiffs allege that they purchased Valeant's Notes (LA Compl. ¶ 33);

PERS and Boeing allege purchases of Notes and common stock (PERS Compl. ¶ 19; Boeing

Compl. ¶ 19).  Plaintiffs assert that they relied on "Defendants'" misrepresentations in deciding

to purchase Valeant securities.  LA Compl. ¶ 376.  They base their securities and common law

fraud claims against PwC exclusively on its audit report on Valeant's 2014 financial statements.

They also charge that the same audit report was part of an illegal scheme—one involving more

than 25 companies or individuals, who joined together no later than January 2013 to inflate the

prices of Valeant's securities for "financial gain."  *Id.* ¶¶ 41–77.  All of the participants were

Valeant's agents or allegedly connected to Valeant in some way, except PwC, which Plaintiffs

acknowledge was the Company's "independent outside auditor."  *Id.* ¶ 135.  The purported

racketeering acts consisted of Valeant's alleged business practices—"price gouging," "creating a

---

[4] Plaintiffs also claim that documents released in the congressional investigation "reveal that
PwC also served as Philidor's outside auditor."  LA Compl. ¶ 72.  PwC was not Philidor's
auditor.  The documents Plaintiffs cite—Philidor's Interrogatory Responses to a Senate
committee (*id.* ¶ 246)—say no such thing.  In any event, the allegation is immaterial, as Plaintiffs
do not identify any information that PwC obtained as "Philidor's auditor."

nationwide network of secret captive pharmacies," "deceptive and illegal practices in the filling of prescriptions and seeking of reimbursements from insurers," "misleading patients, doctors, insurers[,]" and "misleading the investing public as to the nature of Valeant's business model"— as well as "accounting fraud," all allegedly for the purpose of inflating the price of Valeant's securities. *Id.* ¶¶ 408–09.  Plaintiffs do not claim that PwC participated in any of the Company's business practices or that it had any financial interest in Valeant.[5]

## PLEADING STANDARDS

Under Federal Rule 8, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Whether a claim is plausible depends on the *factual* allegations because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Moreover, Plaintiffs' claims are all premised on a "fraudulent scheme."  LA Compl. ¶¶ 1, 408, 425, 429, 433, 460.  Hence "Plaintiffs' pleadings must satisfy the 'stringent' Rule 9(b) requirements for particularity." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. App'x. 82, 85 (3d Cir. 2015) (affirming dismissal of claims premised on "fraudulent scheme").  Plaintiffs must plead "with particularity the circumstances of the alleged fraud," *id.* (internal quotes omitted), and they may not "lump the defendants together and make general conclusory allegations of wrongdoing." *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 430 (D.N.J. 1999).  Congress has mandated additional rigorous pleading standards for securities fraud

---

[5] An auditor is independent and prohibited from participating in, or having a financial interest in, its client's business.  17 C.F.R. § 210.2-01.

## ARGUMENT

**I.  The Court should dismiss the 10(b) securities fraud claim because Plaintiffs do not plead a strong inference of PwC's scienter.**

### A.  The heightened pleading requirements of the PSLRA apply to 10(b) claims.

Plaintiffs' claim under 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), is subject to the "heightened pleading requirements" of the Private Securities Litigation Reform Act ("PSLRA"). *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017).  "The PSLRA requires plaintiffs . . . to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Id.* at 245 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  Here, that is "scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotes omitted).  "[A]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.  Hence "a court must consider plausible, nonculpable explanations for the defendant's conduct[.]" *Id.* at 324.

In order to establish the required strong inference of scienter, a plaintiff must plead particularized "facts that show motive and opportunity to commit fraud, or otherwise facts constituting circumstantial evidence of either reckless or conscious behavior." *Fain v. U.S.A. Techs., Inc.*, 2017 WL 3727435, at *3 (3d Cir. Aug. 30, 2017) (internal quotes omitted). Recklessness involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (internal quotes omitted).

**B.  Pleading an independent auditor's scienter is a demanding task.**

The Second and Third Circuits are generally aligned in their interpretation of the scienter

standard.[6]  And the Second Circuit has recently reaffirmed its longtime high bar for pleading an

outside auditor's scienter, explaining that the auditor's alleged reckless conduct:

> must, in fact, approximate an actual intent to aid in the fraud being
> perpetrated by the audited company, as, for example, when a defendant
> conducts an audit so deficient as to amount to no audit at all, or disregards
> signs of fraud so obvious that the defendant must have been aware of
> them.  Mere allegations of GAAP violations or accounting irregularities,
> or even a lack of due diligence, will not state a securities fraud claim
> absent evidence of corresponding fraudulent intent.

*In re Advanced Battery Techs., Inc.*, 781 F. 3d 638, 644 (2d Cir. 2015) (internal quotes and

citations omitted); *see also Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at *5 (S.D.N.Y.

Feb. 21, 2014) (scienter test "is particularly 'demanding'" in an auditor case).[7]

A demanding standard is appropriate because an auditor's "liability is, in most cases,

based upon the fraud of others," *i.e.*, the audited company.  *Nappier v. PricewaterhouseCoopers

LLP*, 227 F. Supp. 2d 263, 275 (D.N.J. 2002).  And the law sets "limits to the scope of liability

for failure adequately to monitor the allegedly fraudulent behavior of others."  *Novak v. Kasaks*,

216 F.3d 300, 309 (2d Cir. 2000).  Hence an auditor's alleged "'failure . . . to identify problems

with the defendant-company's internal controls and accounting practices does not constitute

reckless conduct sufficient for § 10(b) liability.'"  *Nappier*, 227 F. Supp. 2d at 275 (quoting

*Novak*, 216 F.3d at 309).

---

[6] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("agree[ing] with the Second Circuit's approach" to scienter).

[7] We have not located decisions by the Third Circuit specifically addressing the pleading of an auditor's scienter since *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006), which is a pre-*Tellabs* decision.  In *Key Equity Inv'rs, Inc. v. Sel-Leb Mktg., Inc.*, 246 Fed. App'x 780, 785 n.6 (3d Cir. 2007), the court affirmed dismissal of 10(b) claims, including as to an auditor, but did "not distinguish between defendants in [its] discussion of the issues."

**C.  Plaintiffs' allegations do not give rise to a strong inference of PwC's scienter.**

Plaintiffs do not allege that PwC had a motive to commit fraud.  Nor would any motive to "inflate the price of Valeant's securities" (LA Compl. ¶ 1) be plausible when Plaintiffs do not allege that PwC had any financial interest in those securities.[8]  Having failed to allege motive, the strength of Plaintiffs' recklessness allegations "'must be correspondingly greater.'"  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  It is not.

- **Summary of Defendants' Scienter (LA Compl. ¶¶ 312–70)**

Plaintiffs spend no less than 58 paragraphs on a "Summary of Defendants' Scienter." They mention PwC only once in those seventeen pages, alleging that "Philidor also provided data to Valeant's . . . external auditor, PwC[.]"  LA Compl. ¶ 326.  But Plaintiffs do not say what that data was, much less allege facts showing it contained "signs of fraud so obvious that [PwC] must have been aware of them."  *Advanced Battery*, 781 F. 3d at 644.  Apart from this lone reference, the Summary is devoted to the Individual Defendants or to Valeant, who are the subjects of seven different sections, titled, for example, "The Individual Defendants' Role in Valeant's Unsustainable Business Model" (LA Compl. ¶¶ 315–22) or "Inflating Valeant's Stock Price To Facilitate Acquisitions" (*id.* ¶¶ 362–64).  Plaintiffs also refer to "Defendants" collectively, but in contexts that could not include PwC, such as the Company's presentations to investors (*id.* ¶¶ 329–30, 331).  In short, Plaintiffs could not plausibly allege, and do not even try to allege, that PwC participated in the acts that they claim form a basis for scienter.

---

[8] Plaintiffs note that PwC received audit fees for its services (LA Compl. ¶ 244), but those fees were publicly disclosed in Valeant's proxy statements.  And "it is well-established that an allegation of motive based solely upon a desire to receive professional fees is insufficient." *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing 10(b) claim against attorneys); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (dismissal on same basis of claim against underwriters).

- **PwC's Alleged Violations of Professional Standards (LA Compl. ¶¶ 141–50)**.[9]

Consistent with the relevant standards, Valeant's management was responsible for the Company's financial statements and for maintaining effective internal controls, whereas PwC was responsible for conducting an audit and expressing its opinion about those matters. 2014 10-K, at F-2 to F-3 (Capra Ex. 1); AU 110.01, .03 (Capra Ex. 4); *see also* LA Compl. ¶¶ 48, 50. Based on information that came to light through the investigation, Plaintiffs claim that PwC failed to detect misstatements by Valeant's management in the Company's 2014 financial statements and material weaknesses in the Company's internal controls. LA Compl. ¶¶ 141–50. At the threshold, this *kind* of allegation is completely insufficient. An auditor's alleged "failure . . . to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." *Nappier*, 227 F. Supp. 2d at 275 (internal quotes omitted). And the Third Circuit has "long rejected" the approach of "'pleading fraud by hindsight.'" *In re Amarin Corp. PLC Sec. Litig.*, 689 Fed. App'x 124, 132 (3d Cir. 2017).

Plaintiffs refer to Valeant's sales to Philidor before the December 2014 Purchase Option Agreement, *i.e.*, the sales the Committee later found were outside the normal course of business. Plaintiffs assert that, because these sales occurred outside the normal course (including having large sales volume and delayed payment terms), PwC should have treated them as "significant unusual transactions" and "consider[ed] them more closely." LA Compl. ¶¶ 144–45. This is circular. It amounts to saying that PwC should have known the sales were unusual because they were later found out to be unusual. It is only in hindsight, after the Committee's lengthy investigation, that the nature of the sales became known. And the alleged failure to consider

---

[9] Plaintiffs' heading reads "Valeant and PwC's Violations of GAAP and GAAS." Plaintiffs use "GAAS" (generally accepted auditing standards) interchangeably with "PCAOB standards."

something "more closely" (*id.*¶ 144) comes nowhere close to an "an extreme departure from the standards of ordinary care . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *Fain*, 2017 WL 3727435, at *3 (internal quotes omitted).

Plaintiffs also claim that Valeant should have disclosed Philidor as a material acquisition in its 2014 financial statements and fault PwC for not reaching this conclusion in its audit.  LA Compl. ¶¶ 142, 147–49.  Again, these are hindsight allegations.  Plaintiffs do not dispute that, at the time (year-end 2014), Valeant correctly consolidated Philidor following the Purchase Option Agreement.  *Id.* ¶¶ 206–08.  A company is not required to disclose specific consolidations of immaterial entities and may instead report quantitative information about them in the aggregate. 17 C.F.R. § 210.4-02.  As Plaintiffs note, Valeant determined that Philidor was individually immaterial because it "fell below a 'pre-established internal threshold'" for disclosure.  LA Compl. ¶ 146.  Now, based on Valeant's decision to restate its financial statements in light of improper conduct relating to Philidor by certain Company employees, Plaintiffs say that Philidor was material and so should have been disclosed.  *Id.* ¶ 148.  But whether an entity is individually material is a judgment that is made as of the reporting date based on information specific to that entity known at that time.[10]  A hindsight disagreement about a matter of judgment comes nowhere close to "signs of fraud so obvious that the defendant must have been aware of them." *In re Advanced Battery Techs., Inc.*, 781 F. 3d 638, 644 (2d Cir. 2015).

---

[10] *See* SEC Staff Accounting Bulletin 99, 64 Fed. Reg. 45,150, at 45151 (Aug. 12, 1999) (discussing "materiality judgments"); Conceptual Framework For Fin. Reporting, Concept No. 8 at 26 (Fin. Accounting Standards Bd. 2010) (materiality is "entity-specific").  Thus, Plaintiffs' observation that Valeant's 2014 financial statements disclosed two "smaller" transactions misses the point: those two transactions occurred and were originally disclosed in 2012 and 2013, subject to materiality thresholds of a then-smaller company.  That those disclosures were repeated in the 2014 financial statements says nothing about Philidor, a 2014 transaction whose materiality had to be assessed as of 2014.  *See* LA Compl. ¶ 147; 2014 10-K, at F-21, F-25 (Capra Ex. 1).

In sum, Plaintiffs' core claim is that PwC violated professional standards by failing to "inquire further into the [Philidor] transactions" or "consider them more closely." LA Compl. ¶¶ 143–44. That claim sounds in negligence, not fraud. Indeed, Plaintiffs' acknowledgement that PwC performed "normal audit procedures" relating to Philidor (*id.* ¶ 246) and that it was provided incorrect information (*id.* ¶ 337), precludes any notion that PwC engaged in intentional wrongdoing, *i.e.*, "no audit at all," *Advanced Battery*, 781 F. 3d at 644, or a mere "'pretended audit[,]'" *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006).

The fact that this Court denied the Company's motion to dismiss the Class Plaintiffs' Section 10(b) claim does not compel the same result here as to PwC. Courts routinely dismiss 10(b) claims against auditors on these kinds of allegations, even when a 10(b) claim has been stated against the company or its management. For example, in *Scottish Re*, the court held that plaintiffs had adequately alleged that company officers were reckless regarding accounting for deferred tax assets and internal controls. *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 393–95 (S.D.N.Y. 2007). But the court reached a different result as to the auditor:

> Notwithstanding these allegations [of clear indications of a lack of proper controls], scienter has not been adequately pled. At best, plaintiffs have alleged that a reasonable auditor would have discovered the problems with the Company's valuation of the deferred tax assets and internal controls. However, such allegations would support a claim of negligence, but would not "approximate an actual intent to aid in the fraud being perpetrated[.]"

*Id.* at 398 (quoting *Rothman v. Gregor*, 220 F.3d 81, 99 (2d Cir. 2000)). The same is true here.

**D. Plaintiffs' allegations give rise to more compelling nonfraudulent inferences.**

A court must dismiss a 10(b) claim when the allegations give rise to more compelling nonfraudulent inferences for the defendant's conduct. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Here, Plaintiffs' allegations give rise to at least two stronger nonfraudulent inferences.

One stronger inference is that former Valeant officers' "improper conduct"—their "provision of incorrect information" to PwC that "contributed to the misstatement of financial results"—interfered with PwC's ability to identify material misstatements.  LA Compl. ¶ 337; 2015 10-K at Exp. Note (Capra Ex. 2).  When incorrect information has been improperly provided to an auditor, the inference that the auditor was misled, rather than that it was reckless, is stronger.  *See In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (dismissing 10(b) claim because "the inference that PwC was a victim of Doral's fraud is far more compelling than the inference that PwC acted with scienter"), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009).

The allegations also give rise to the stronger inference that PwC made a simple mistake. In *Fain*, the Third Circuit affirmed dismissal of claims relating to a company's bad debt expenses because the "more likely inference" was that the company's "staffers simply misclassified these bad debts or otherwise failed to deem them uncollectible, not that the Defendants were aware of them and recklessly disregarding them."  *Fain v. USA Techs., Inc.*, 2017 WL 3727435, at *4 (3d Cir. Aug. 30, 2017).  The same point applies here to Plaintiffs' allegations concerning Valeant's recognition of revenue on certain sales to Philidor and judgment that the Philidor Purchase Option Agreement was not a material acquisition.  Accepting those allegations as true, the far more likely inference is that PwC's evaluation of management's positions was simply mistaken, not that PwC was aware of any misstatement and recklessly disregarded it.

## II.  The Court should dismiss the common law fraud claim because Plaintiffs fail to plead PwC's fraudulent intent and because SLUSA precludes it.

Plaintiffs' failure to raise any inference of PwC's scienter likewise compels dismissal of their common law fraud claim.  Common law fraud requires a material misrepresentation made with "knowledge or belief . . . of its falsity."  *Gennari v. Weichert Co. Realtors*, 691 A.2d 350,

367 (N.J. 1997).  Rule 9(b) applies.  *Barnard v. Verizon Commc'ns, Inc.*, 451 F. App'x 80, 86 (3d Cir. 2011).  And when "factual averments of securities fraud are not sufficient to state a claim," a "common law fraud claim fails for much the same reason."  *Id.*  Here, the Court should dismiss the common law fraud claim because, as shown above, Plaintiffs "fail[] to allege any facts in support of [PwC's] knowledge or belief of [the] falsity" of its audit report.  *Automotive Fin. Corp. v. DZ Motors, LLC*, 2017 WL 3176275, at *6 (D.N.J. July 26, 2017) (Shipp, J.); *Hills v. Bank of Am.*, 2014 WL 4113131, at *9 (D.N.J. June 30, 2014) (dismissing fraud claim because "Plaintiffs only plead knowledge and intent in a conclusory manner").

The Court should also dismiss the common law fraud claim because it is precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb, for the reasons given in Part IIIA of the Valeant Defendants' Omnibus Memo, which PwC incorporates by reference herein.

### III. The Court should dismiss the New Jersey RICO claims because Plaintiffs fail to plead PwC's knowing participation in an enterprise and other essential elements.

"[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (internal citations omitted).  Here, the RICO charges consist of nothing more than formulaic recitations of the elements of the claims.  They are implausible, conclusory, and unsupported by any factual allegations that would show PwC's wrongful intent or other essential elements.  Plaintiffs' claim that PwC, as Valeant's independent accounting firm, is guilty of very serious misconduct—*i.e.*, that PwC knowingly engaged in a "a pattern of racketeering activity," "conspired" with its audit client, and "aided and abetted" other racketeers—lacks a good faith basis and is beyond the bounds of zealous advocacy.

### A.  The RICO claims fail because they are implausible and conclusory.

For starters, the claims are implausible.  Plaintiffs have not pleaded any allegations that would explain why an auditor, with no financial interest in Valeant's securities, would join an alleged criminal enterprise whose purpose was "to artificially inflate the price of Valeant's securities."  LA Compl. ¶ 1.  The allegation that PwC was given "incorrect information" by some of the participants in the supposed criminal enterprise is also completely inconsistent with any such theory.  *Id.* ¶ 337.

Instead of attempting to plead plausible factual allegations, Plaintiffs merely recite the elements of their claim, for example, that "Defendants agreed to conduct and participate in, and conducted and participated in, the Enterprise's scheme through a pattern of racketeering activity within the meaning of N.J. Stat. Ann. 2C:41-1(d)."  LA Compl. ¶ 407; *see also id.* ¶¶ 405–21, 423–26, 428–30.  The Court is not bound by those legal conclusions, however, and considers only whether the *factual* allegations state "a plausible claim for relief" in light of "judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs provide no factual allegations, and their claims fail for that reason alone.

### B.  Plaintiffs do not plead PwC's knowing participation in an enterprise or conspiracy.

Plaintiffs' RICO claims are all based on an alleged fraudulent scheme.  *See, e.g.*, LA Compl. ¶¶ 408, 425, 429.  Rule 9(b) therefore applies.  *Automotive Fin. Corp.*, 2017 WL 3176275, at *5 (applying Rule 9(b) to "fraud-based RICO claim[s]"); *Construcciones Haus Sociedad v. Kennedy Funding Inc.*, 2008 WL 1882857, at *5 (D.N.J. Apr. 24, 2008) (applying Rule 9(b) to NJ RICO claim "asserting a fraudulent predicate act").  Like the fraud claim, each RICO claim requires particularized allegations showing the defendant's purposeful and knowing conduct.  The same fundamental problems with the securities and common law fraud claims also compel dismissal of the RICO claims.  *See* Parts I(C) and (D), *supra*.

**Count I: Participation in RICO enterprise (N.J. Stat. Ann. 2C:41-2(c))**.  Under this statute, it is unlawful for associated persons "to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity."  This conduct-or-participate element "means to act *purposefully and knowingly* in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist[,] or help effectuate the goals of the enterprise."  *State v. Ball*, 661 A.2d 251, 268 (N.J. 1995) (emphasis added).  There are no such allegations as to PwC.

**Count II: Conspiracy (N.J. Stat. Ann. 2C:41-2(d))**.  Under this statute, it is unlawful for any person to conspire to violate other RICO provisions.  A RICO conspiracy requires that the defendant have "'acted *knowingly and purposely* with knowledge of the unlawful objective of the conspiracy and *with the intent* to further its unlawful objective.'"  *Ball*, 661 A.2d at 270 (quoting Appellate Division holding) (emphases added).  There are no such allegations as to PwC.  *See Coastal Grp., Inc. v. Westholme Partners*, 1996 WL 33545605, at *10 n.14 (D.N.J. Oct. 3, 1996) (dismissing RICO conspiracy claim because "plaintiff has failed to allege facts suggesting that defendants engaged in fraudulent activity"); *see also The Knit With v. Knitting Fever, Inc.*, 625 Fed. App'x 27, 35 (3d Cir. 2015) (affirming dismissal of federal RICO conspiracy claim because "innocently provid[ing] services" is not enough; services must be "'purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity'").

**Count III: Aiding and Abetting a New Jersey RICO violation**.  An aiding and abetting claim requires that a defendant provide "willful and *knowing* substantial assistance" to an underlying tort or statutory violation.  *Cafaro v. HMC Intern., LLC*, 2009 WL 1622825, at *4 (D.N.J. June 10, 2009) (internal quotes omitted) (emphasis added).  Again, there are no such

allegations as to PwC. *See also Miller v. P.G. Lewis & Assoc.*, 2007 WL 316446, at *7 (D.N.J. Jan. 30, 2007) (aiding and abetting RICO claim against attorney futile because allegations showed only "normal course of business," not *knowing* substantial assistance).[11]

### C. The Court should dismiss the New Jersey RICO claims because Plaintiffs fail to plead other essential elements as to PwC.

Plaintiffs also do not plead other essential elements of their RICO claims as to PwC: a pattern of racketeering; the existence of an illegal agreement; or PwC's substantial assistance.

### 1. The primary RICO claim (N.J. Stat. Ann. 2C:41-2(c)) fails because Plaintiffs do not plead a pattern of racketeering activity by PwC.

Plaintiffs do not plead, as required, that PwC participated in any enterprise "through a pattern of racketeering activity." N.J. Stat. Ann. 2C:41-2(c). A pattern means "[e]ngaging in at least two incidents of racketeering activity." *Id.* 2C:41-1(d)(1). Plaintiffs do not plead that PwC committed a single predicate act, much less a pattern of acts, for two reasons.

First, Plaintiffs lump defendants together and merely list predicate acts that "Defendants" allegedly committed. LA Compl. ¶ 409. Neither lumping nor listing works. *See Silverstein v. Percudani*, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006) (dismissing federal RICO claims because the complaint "'lumps' together numerous defendants"); *Ricale Assocs., LLC v. McGregor*, 2015 WL 5781063, at *5 (D.N.J. Sept. 30, 2015) ("Merely listing these predicate acts is not sufficient to state a RICO claim. Plaintiff must adequately plead the elements of each predicate act.")

---

[11] The paucity of Plaintiffs' allegations contrasts to cases where New Jersey RICO claims against outside professionals have proceeded past dispositive motions. *See Mayo, Lynch & Assocs. v. Pollack*, 799 A.2d 12, 19 (N.J. App. Div. 2002) (attorney's letter certified compliance with bid requirements when the bond had a blank amount and the mandated surety consent was missing; these "obvious deficiencies" rendered his opinion "so egregiously wrong that a jury could find that it surpassed negligence or recklessness" and was evidence of "knowledge of the bid-rigging scheme"); *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 245-49 (D.N.J. 2000) (audit client's particularized allegations that partner, working with others, made multiple misrepresentations regarding firm's independence in order to retain client while partners owned client's stock stated RICO claim). There are no remotely comparable allegations here.

(Shipp, J.) (federal statute).  Plaintiffs' failure and inability to plead a predicate act requires

dismissal of the RICO claim against PwC.  *See Automotive Fin. Corp*, 2017 WL 3176275, at *6

(plaintiff failed to "identify related conduct that would qualify as predicate acts under the NJ

RICO statute").

Second, Plaintiffs do not allege that PwC engaged in the requisite *pattern* of racketeering

activity.  Plaintiffs allege only one act or incident by PwC—that PwC provided an audit report on

Valeant's 2014 financial statements.  LA Compl. ¶ 244.  That does not qualify as a predicate act

because Plaintiffs have failed to allege that PwC's report was fraudulent.  But in any event, it was

one incident, whereas a pattern requires "at least two."  N.J. Stat. Ann. 2C:41-1(d)(1); *see Ricale

Assocs.*, 2015 WL 5781063, at *6 (dismissing federal RICO claim because the "predicate 'acts'

[were] in fact based on a single act").[12]; *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 303

(D.N.J. 2007) (granting summary judgment because New Jersey RICO claim "pertain[ed] to an

isolated incident of fraud").

### 2. The Court should dismiss the RICO conspiracy claim because Plaintiffs do not plead the existence of any unlawful agreement that included PwC.

The RICO conspiracy claim fails because Plaintiffs do not allege the existence of an

unlawful agreement, as required.  *See Ball*, 661 A.2d at 270 (defendant must have "'agreed to

participate directly or indirectly in the conduct of the affairs of the enterprise by agreeing to

commit, or to aid other members of the conspiracy to commit, at least two racketeering acts'")

(quoting Appellate Division decision).  Plaintiffs have not pleaded that PwC agreed to participate

in an enterprise or to aid a conspiracy.  All their allegations of an unlawful agreement are

collective and conclusory, for example: "Defendants agreed to conduct and participate in, and

---

[12] Although the federal statute refers to "acts" rather than "incidents," the distinction is immaterial in this context.  A single act or incident is insufficient under either statute.  *See State v. Ball*, 661 A.2d 251, 264 (N.J. 1995) (statute does not cover "isolated criminal incidents").

conducted and participated in, the Enterprise's scheme[.]"  LA Compl. ¶ 407; *see also id.* ¶¶ 77,

423.  The Court should dismiss the claim because Plaintiffs have "not sufficiently alleged the

existence of any agreement" among defendants "beyond mere legal conclusions."  *Warren v.*

*Fisher*, 2011 WL 4073753, at *6 (D.N.J. Sept. 12, 2011) (dismissing conspiracy claim under

§ 2C:41-2(d))..[13]

### 3. The Court should dismiss the aiding and abetting RICO claim because Plaintiffs do not plead that PwC's assistance was substantial.

An aiding and abetting claim requires that a defendant's assistance to the commission of

an underlying tort or statutory violation be "substantial."  *Cafaro*, 2009 WL 1622825, at *4.

Plaintiffs' allegations are mere legal conclusions: "PwC pursued a common plan and design, and

actively participated in, aided and encouraged the other Enterprise members[.]"  LA Compl.

¶ 428; *see also id.* ¶ 429 (similar collective allegation regarding "Defendants").  The only factual

allegation—that PwC performed an audit of Valeant's financial statements (*id.* ¶ 244)—is beside

the point because substantial assistance requires "more than just performing routine business

services for the alleged fraudster."  *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed.

App'x 636, 643 (2d Cir. 2012) (affirming dismissal of aiding and abetting breach of fiduciary

claims against auditors) (internal quotes and citation omitted); *Miller*, 2007 WL 316446, at *7

("normal course of business" insufficient to plead substantial assistance for New Jersey RICO

claim).

---

[13] *See also Miller v. P.G. Lewis & Assoc.*, 2007 WL 316446, at *7-8 (D.N.J. Jan. 30, 2007)
(motion to amend was futile because plaintiff did not allege facts showing that proposed
defendants "entered into any agreement with the existing defendants to assist them in their RICO
violations"); *see also Capers v. FedEx Ground*, 2012 WL 2050247, at *4 (D.N.J. June 6, 2012)
(dismissing federal RICO conspiracy claim because plaintiffs "fail[ed] to allege facts" showing
"an agreement"); *Smith v. Jones, Gregg, Creehan & Gerace LLP*, 2008  WL 5129916, at *7
(W.D. Pa. Dec. 5, 2008) (dismissing federal RICO conspiracy claim because plaintiff resorted to
"sweeping generalizations" but did not plead "specific facts as to any Defendant's agreement to
conspire").

**D.  Plaintiffs fail to plead a RICO enterprise or a RICO injury.**

For the reasons given in Part I of the Valeant Defendants' Memorandum of Law, which PwC incorporates by reference herein, the Court should also dismiss all the RICO claims as to PwC because Plaintiffs fail to plead a RICO enterprise and fail to allege a RICO injury.

<u>CONCLUSION</u>

The Court should dismiss all claims against PwC by the Lord Abbett, Boeing, and PERS Plaintiffs, with prejudice.

Dated:  December 6, 2017

CHIESA SHAHINIAN & GIANTOMASI PC

By:    <u>/s/ A. Ross Pearlson</u>
         A. Ross Pearlson
         One Boland Drive
         West Orange, NJ 07052
         Telephone: (973) 530-2100
         Facsimile: (973) 530-2300

         KING & SPALDING LLP

         James J. Capra, Jr. (admitted *pro hac vice*)
         1185 Avenue of the Americas
         New York, NY 10036-4003
         Telephone: (212) 556-2100
         Facsimile: (212) 556-2222

         Kenneth Y. Turnbull (admitted *pro hac vice*)
         1700 Pennsylvania Avenue, NW
         Washington, DC 20006-4707
         Telephone: (202) 737-0500
         Facsimile: (202) 626-3737

         *Attorneys for Defendant*
         *PricewaterhouseCoopers LLP*

**Appendix A to PwC's Omnibus Memorandum of Law**

PwC's Omnibus Memorandum of Law cites allegations of the Lord Abbett Complaint. This Appendix cross-references to the substantively identical allegations in the PERS and Boeing Complaints.

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 1 | ¶ 1 | ¶ 1 |
| ¶ 33 | ¶ 19 | ¶ 19 |
| ¶ 41 | ¶ 27 | ¶ 27 |
| ¶ 42 | ¶ 28 | ¶ 28 |
| ¶ 43 | ¶ 29 | ¶ 29 |
| ¶ 44 | ¶ 30 | ¶ 30 |
| ¶ 45 | ¶ 31 | ¶ 31 |
| ¶ 46 | ¶ 32 | ¶ 32 |
| ¶ 47 | ¶ 33 | ¶ 33 |
| ¶ 48 | ¶ 34 | ¶ 34 |
| ¶ 49 | ¶ 35 | ¶ 35 |
| ¶ 50 | ¶ 36 | ¶ 36 |
| ¶ 51 | ¶ 37 | ¶ 37 |
| ¶ 52. | ¶ 38 | ¶ 38 |
| ¶ 53 | ¶ 39 | ¶ 39 |
| ¶ 54 | ¶ 40 | ¶ 40 |
| ¶ 55 | ¶ 41 | ¶ 41 |
| ¶ 56 | ¶ 42 | ¶ 42 |
| ¶ 57 | ¶ 43 | ¶ 43 |
| ¶ 58 | ¶ 44 | ¶ 44 |
| ¶ 59 | ¶ 45 | ¶ 45 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 60 | ¶ 46 | ¶ 46 |
| ¶ 61 | ¶ 47 | ¶ 47 |
| ¶ 62(c) | ¶ 48(c) | ¶ 48(c) |
| ¶ 63. | ¶ 49 | ¶ 49 |
| ¶ 64 | ¶ 50 | ¶ 50 |
| ¶ 65 | ¶ 51 | ¶ 51 |
| ¶ 66. | ¶ 52 | ¶ 52 |
| ¶ 67 | ¶ 53 | ¶ 53 |
| ¶ 68 | ¶ 54 | ¶ 54 |
| ¶ 69 | ¶ 55 | ¶ 55 |
| ¶ 70 | ¶ 56 | ¶ 56 |
| ¶ 71 | ¶ 57 | ¶ 57 |
| ¶ 72. | ¶ 58 | ¶ 58 |
| ¶ 73 | ¶ 59 | ¶ 59 |
| ¶ 74 | ¶ 60 | ¶ 60 |
| ¶ 75 | ¶ 61 | ¶ 61 |
| ¶ 76 | ¶ 62 | ¶ 62 |
| ¶ 77 | ¶ 63 | ¶ 63 |
| ¶ 110 | ¶ 96 | ¶ 96 |
| ¶ 111 | ¶ 97 | ¶ 97 |
| ¶ 135 | ¶ 121 | ¶ 121 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 136 | ¶ 122 | ¶ 122 |
| ¶ 137 | ¶ 123 | ¶ 123 |
| ¶ 138 | ¶ 124 | ¶ 124 |
| ¶ 139 | ¶ 125 | ¶ 125 |
| ¶ 140 | ¶ 126 | ¶ 126 |
| ¶ 141 | ¶ 127 | ¶ 127 |
| ¶ 142 | ¶ 128 | ¶ 128 |
| ¶ 143 | ¶ 129 | ¶ 129 |
| ¶ 144 | ¶ 130 | ¶ 130 |
| ¶ 145 | ¶ 131 | ¶ 131 |
| ¶ 146 | ¶ 132 | ¶ 132 |
| ¶ 147 | ¶ 133 | ¶ 133 |
| ¶ 148 | ¶ 134 | ¶ 134 |
| ¶ 149 | ¶ 135 | ¶ 135 |
| ¶ 150 | ¶ 136 | ¶ 136 |
| ¶ 206 | ¶ 192 | ¶ 192 |
| ¶ 207 | ¶ 193 | ¶ 193 |
| ¶ 208 | ¶ 194 | ¶ 194 |
| ¶ 216 | ¶ 202 | ¶ 202 |
| ¶ 244 | ¶ 230 | ¶ 230 |
| ¶ 245 | ¶ 231 | ¶ 231 |
| ¶ 246 | ¶ 232 | ¶ 232 |
| ¶ 247 | ¶ 233 | ¶ 233 |
| ¶ 259 | ¶ 245 | ¶ 245 |
| ¶ 266 | ¶ 252 | ¶ 252 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 305 | ¶ 292 | ¶ 293 |
| ¶ 312 | ¶ 301 | ¶ 302 |
| ¶ 313 | ¶ 302 | ¶ 303 |
| ¶ 314 | ¶ 303 | ¶ 304 |
| ¶ 315 | ¶ 304 | ¶ 305 |
| ¶ 316 | ¶ 305 | ¶ 306 |
| ¶ 317 | ¶ 306 | ¶ 307 |
| ¶ 318 | ¶ 307 | ¶ 308 |
| ¶ 319 | ¶ 308 | ¶ 309 |
| ¶ 320 | ¶ 309 | ¶ 310 |
| ¶ 321 | ¶ 310 | ¶ 311 |
| ¶ 322 | ¶ 311 | ¶ 312 |
| ¶ 323 | ¶ 312 | ¶ 313 |
| ¶ 324 | ¶ 313 | ¶ 314 |
| ¶ 325 | ¶ 314 | ¶ 315 |
| ¶ 326 | ¶ 315 | ¶ 316 |
| ¶ 327 | ¶ 316 | ¶ 317 |
| ¶ 328 | ¶ 317 | ¶ 318 |
| ¶ 329 | ¶ 318 | ¶ 319 |
| ¶ 330 | ¶ 319 | ¶ 320 |
| ¶ 331 | ¶ 320 | ¶ 321 |
| ¶ 332 | ¶ 321 | ¶ 322 |
| ¶ 333. | ¶ 322 | ¶ 323 |
| ¶ 334 | ¶ 323 | ¶ 324 |
| ¶ 335 | ¶ 324 | ¶ 325 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 336 | ¶ 325 | ¶ 326 |
| ¶ 337. | ¶ 326 | ¶ 327 |
| ¶ 338 | ¶ 327 | ¶ 328 |
| ¶ 339 | ¶ 328 | ¶ 329 |
| ¶ 340 | ¶ 329 | ¶ 330 |
| ¶ 341 | ¶ 330 | ¶ 331 |
| ¶ 342 | ¶ 331 | ¶ 332 |
| ¶ 343 | ¶ 332 | ¶ 333 |
| ¶ 344 | ¶ 333 | ¶ 334 |
| ¶ 345 | ¶ 334 | ¶ 335 |
| ¶ 346 | ¶ 335 | ¶ 336 |
| ¶ 347 | ¶ 336 | ¶ 337 |
| ¶ 348 | ¶ 337 | ¶ 338 |
| ¶ 349 | ¶ 338 | ¶ 339 |
| ¶ 350 | ¶ 339 | ¶ 340 |
| ¶ 351 | ¶ 340 | ¶ 341 |
| ¶ 352 | ¶ 341 | ¶ 342 |
| ¶ 353 | ¶ 342 | ¶ 343 |
| ¶ 354 | ¶ 343 | ¶ 344 |
| ¶ 355 | ¶ 344 | ¶ 345 |
| ¶ 356 | ¶ 345 | ¶ 346 |
| ¶ 357 | ¶ 346 | ¶ 347 |
| ¶ 358 | ¶ 347 | ¶ 348 |
| ¶ 359 | ¶ 348 | ¶ 349 |
| ¶ 360 | ¶ 349 | ¶ 350 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 361 | ¶ 350 | ¶ 351 |
| ¶ 362 | ¶ 351 | ¶ 352 |
| ¶ 363 | ¶ 352 | ¶ 353 |
| ¶ 364 | ¶ 353 | ¶ 354 |
| ¶ 365 | ¶ 354 | ¶ 355 |
| ¶ 366 | ¶ 355 | ¶ 356 |
| ¶ 367 | ¶ 356 | ¶ 357 |
| ¶ 368 | ¶ 357 | ¶ 358 |
| ¶ 369 | ¶ 358 | ¶ 359 |
| ¶ 370 | ¶ 359 | ¶ 360 |
| ¶ 376 | N/A | ¶ 366 |
| ¶ 405 | ¶ 379 | ¶ 390 |
| ¶ 406 | ¶ 380 | ¶ 391 |
| ¶ 407 | ¶ 381 | ¶ 392 |
| ¶ 408 | ¶ 382 | ¶ 393 |
| ¶ 409 | ¶ 383 | ¶ 394 |
| ¶ 410 | ¶ 384 | ¶ 395 |
| ¶ 411 | ¶ 385 | ¶ 396 |
| ¶ 412 | ¶ 386 | ¶ 397 |
| ¶ 413 | ¶ 387 | ¶ 398 |
| ¶ 414 | ¶ 388 | ¶ 399 |
| ¶ 415 | ¶ 389 | ¶ 400 |
| ¶ 416 | ¶ 390 | ¶ 401 |
| ¶ 417 | ¶ 391 | ¶ 402 |
| ¶ 418 | ¶ 392 | ¶ 403 |

| Lord Abbett (cited ¶) | PERS | Boeing |
|---|---|---|
| ¶ 419 | ¶ 393 | ¶ 404 |
| ¶ 420 | ¶ 394 | ¶ 405 |
| ¶ 421 | ¶ 395 | ¶ 406 |
| ¶ 423 | ¶ 397 | ¶ 408 |
| ¶ 424 | ¶ 398 | ¶ 409 |
| ¶ 425 | ¶ 399 | ¶ 410 |
| ¶ 426 | ¶ 400 | ¶ 411 |
| ¶ 428 | ¶ 402 | ¶ 413 |
| ¶ 429 | ¶ 403 | ¶ 414 |
| ¶ 430 | ¶ 404 | ¶ 415 |
| ¶ 433 | ¶ 407 | ¶ 418 |
| ¶ 460 | N/A | ¶ 443 |