**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LORD ABBETT INVESTMENT TRUST – LORD ABBETT SHORT DURATION INCOME FUND, et al., | Civil Action No. 17-CV-6365(MAS)(LHG) |
| Plaintiffs, | **(ORAL ARGUMENT REQUESTED)** |
| v. | **Motion Day: April 2, 2018** |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

*Captions continue on the next page*

---

**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF VALEANT
PHARMACEUTICALS INTERNATIONAL, INC. AND ROBERT ROSIELLO'S
PARTIAL MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice pending*)
Jonathan K. Youngwood (*pro hac vice pending*)
Craig S. Waldman (*pro hac vice pending*)
Daniel J. Stujenske (*pro hac vice pending*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc. and Robert Rosiello*

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, | **Civil Action No. 17-CV-7625(MAS)(LHG)** |
| Plaintiff, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| THE BOEING COMPANY EMPLOYEE RETIREMENT PLANS MASTER TRUST and THE BOEING COMPANY EMPLOYEE SAVINGS PLANS MASTER TRUST, | **Civil Action No. 17-CV-7636(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 3

    A.    The Alleged Securities Violations ..........................................................5

    B.    The Alleged RICO Violations ................................................................7

LEGAL STANDARD ............................................................................................ 8

ARGUMENT ...................................................................................................... 9

I.      PLAINTIFFS FAIL TO STATE NEW JERSEY RICO CLAIMS.................................. 9

    A.    Plaintiffs Fail To Plead An Enterprise ................................................10

        1.    The complaints negate the existence of a RICO enterprise. ......................10

        2.    Plaintiffs do not plead an enterprise with a discernable organization or decision-making structure..................................13

    B.    Plaintiffs Have Not Alleged RICO Injuries Related to the Valeant Notes ............14

    C.    The Failure To Plead a RICO Claim Dooms Plaintiffs' Conspiracy Claims ........16

    D.    Plaintiffs Do Not Demonstrate Any Agreement To Violate RICO ......................17

II.    THE *LORD ABBETT* AND *BOEING* PLAINTIFFS DO NOT STATE SECTION 18 CLAIMS ................................................................................................ 19

    A.    Plaintiffs' Claims Are Untimely ..........................................................19

    B.    Plaintiffs Fail To Meet Section 18's Stringent Reliance Standard ......................21

III.   THE PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL................................. 23

    A.    SLUSA Preempts Plaintiffs' Negligent Misrepresentation and Common Law Fraudulent Inducement Claims..................................................24

        1.    This Action Constitutes A "Covered Class Action" Under SLUSA. ........24

        2.    This Action Alleges Misrepresentations In Connection With Trades of Covered Securities. ..................................................26

    B.    Even If Not Preempted, Plaintiffs Fail to State a Negligent Misrepresentation or Common Law Fraud Claim ..................................28

CONCLUSION.................................................................................................. 29

## <u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**Cases**

*300 Broadway v. Martin Friedman Assocs., P.C.*,
    2009 WL 3297558 (D.N.J. Oct. 13, 2009) ........................................................... 12

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351 (S.D.N.Y. 2010) ........................................................... 25, 26

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ........................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................... 9, 19

*Cohen v. Telsey*,
    2009 WL 3747059 (D.N.J. Nov. 2, 2009) ........................................................... 28

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) ........................................................... 14

*Elias v. Ungar's Food Prod., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008) ........................................................... 28

*Fagan v. Fischer*,
    2016 WL 347318 (D.N.J. Jan. 28, 2016) ........................................................... 16

*Fimbel v. Fimbel Door Corp.*,
    2014 WL 6992004 (D.N.J. Dec. 10, 2014) ........................................................... 9, 14

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ........................................................... 15

*Galicki v. New Jersey*,
    2016 WL 4950995 (D.N.J. Sept. 15, 2016) ........................................................... 9, 12, 13

*Hlista v. Safeguard Props., LLC*,
    649 F. App'x 217 (3d Cir. 2016) ........................................................... 16

*Hollis-Arrington v. PHH Mortg. Corp.*,
    2005 WL 3077853 (D.N.J. Nov. 5, 2005) ........................................................... 12, 13

*Holtz v. JPMorgan Chase Bank, N.A.*,
   846 F.3d 928 (7th Cir. 2017) ............................................................. 27

*In re Able Labs. Sec. Litig.*,
   2008 WL 1967509 (D.N.J. Mar. 24, 2008) .................................... 20, 23

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
   2005 WL 1679540 (S.D.N.Y. Jul. 18, 2005) ...................................... 20

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014) ................................................. 22

*In re Genentech, Inc. Sec. Litig.*,
   1989 WL 106834 (N.D. Cal. July 7, 1989) ......................................... 21

*In re MDC Holdings Sec. Litig.*,
   754 F. Supp. 785 (S.D. Cal. 1990) ...................................................... 21

*In re Merrill Lynch Ltd. P'ships Litig.*,
   7 F. Supp. 2d 256 (S.D.N.Y. 1997) .................................................... 15

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ............................................................... 3

*In re Refco Inc. Secs. Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011) ........................................... 13, 14

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ............................................................... 10

*In re Stone & Webster, Inc., Sec. Litig.*,
   253 F. Supp. 2d 102 (D. Mass. 2003) ................................................ 23

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ......................................................... 21, 23

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ................................................ 27

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) .......................................................... 25

*Interchange State Bank v. Veglia*,
   668 A.2d 465 (N.J. App. Div. 1995) .................................................. 14

*Kaufman v. i-Stat Corp.*,
   165 N.J. 94 (2000) .............................................................................. 28

*Kaufman v. i-Stat Corp.*,
    735 A.2d 606 (N.J. Super. Ct. App. Div. 1999) ........................................ 29

*Kelley v. Rambus, Inc.*,
    2008 WL 1766942 (N.D. Cal. Apr. 17, 2008) ....................................... 20

*Klawonn v. YA Glob. Invs., L.P.*,
    2016 WL 5923435 (D.N.J. May 6, 2016) ............................................. 21

*Kolar v. Preferred Real Estate Invs., Inc.*,
    361 F. App'x 354 (3d Cir. 2010) ....................................................... 10

*Landy v. Fed. Deposit Ins. Corp.*,
    486 F.2d 139 (3d Cir. 1973) ............................................................. 16

*LaSala v. Bordier et Cie*,
    519 F.3d 121 (3d Cir. 2008) ............................................................. 24

*Lightning Lube v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ............................................................... 16

*Luis v. RBC Capital Markets, LLC*,
    2016 WL 6022909 (D. Minn. Oct. 13, 2016) ...................................... 27

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ............................................................. 14

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) ............................................................... 16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) .......................................................................... 24

*Miller v. P.G. Lewis & Assoc.*,
    2007 WL 316446 (D.N.J. Jan. 30, 2007) .......................................... 18

*Morales v. Superior Living Prods., LLC*,
    398 F. App'x 812 (3d Cir. 2010) ........................................................ 9

*Oaktree Capital Mgmt., L.P. v. KPMG*,
    963 F. Supp. 2d 1064 (D. Nev. 2013) ............................................... 20

*Parrino v. Swift*,
    2006 WL 1722585 (D.N.J. June 19, 2006) ........................................ 12

*People Express Airlines v. Consol. Rail Corp.*,
    100 N.J. 246 (1985) ........................................................................ 29

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................... 10

*Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*,
    2015 WL 502039 (D.N.J. Feb. 5, 2015) ....................................... 28, 29

*Roll v. Singh*,
    2008 WL 3413863 (D.N.J. June 26, 2008) ............................................ 28

*Rothberg v. Marger*,
    2013 WL 1314699 (D.N.J. Mar. 28, 2013) ............................................ 10

*Rowinski v. Salomon Smith Barney Inc.*,
    398 F.3d 294 (3d Cir. 2005) .................................................................... 24

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*,
    2008 WL 5129916 (W.D. Pa. Dec. 5, 2008) ......................................... 17

*Special Situations Fund III QP, L.P. v. Deloitte Touche Thomatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ..................................................... 22

*State v. Ball*,
    141 N.J. 142 (1995) ..................................................................... *passim*

*Stichting Pensioenfonds ABP v. Merck & Co.*,
    2012 WL 3235783 (D.N.J. Aug. 1, 2012) ....................... 24, 25, 26, 28

*Tarr v. Ciasulli*,
    181 N.J. 70 (2004) .................................................................................. 16

*The Knit With v. Knitting Fever, Inc.*,
    625 F. App'x 27 (3d Cir. 2015) ............................................................. 17

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................................ 11

*Witriol v. Conexant Sys., Inc.*,
    2006 WL 3511155 (D.N.J. Dec. 4, 2006) ............................................. 22

*WM High Yield Fund v. O'Hanlon*,
    2005 WL 6788446 (E.D. Pa. May 13, 2005) ....................................... 20

## Statutes

15 U.S.C. § 77p(f)(3) .................................................................................. 27

15 U.S.C. § 77r(b)(1)(A) ........................................................................... 27

15 U.S.C. § 78bb(f)(1)(A) .......................................................................... 24

15 U.S.C. § 78bb(f)(5)(B) .................................................................................. 24

15 U.S.C. § 78bb(f)(5)(B)(ii)(II) ...................................................................... 25

15 U.S.C. § 78r(a) ............................................................................................. 23

15 U.S.C. § 78r(c) ....................................................................................... 19, 20

17 C.F.R. § 240.13a-13(d) ............................................................................... 23

N.J. Stat. Ann. § 2C:41-1 *et seq.* ...................................................................... 9

N.J. Stat. Ann. § 2C:41-1.1(c) ......................................................................... 16

N.J. Stat. Ann. § 2C:41–4 ................................................................................ 14

**Other Authorities**

Restatement (Second) of Torts § 876(b) ......................................................... 16

Valeant Pharmaceuticals International, Inc. ("Valeant") and Robert Rosiello ("Rosiello," and, together with Valeant, "Defendants") submit this memorandum of law, pursuant to Federal Rule of Civil Procedure 12(b)(6), in support of their partial motions to dismiss the three complaints with prejudice.[1]

## PRELIMINARY STATEMENT

These partial motions to dismiss target claims Plaintiffs included in their complaints in an effort to seek damages beyond those already sought in *In re Valeant Pharmaceuticals Securities Litigation*, (the "Class Action"), namely claims under the New Jersey Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as under Section 18 of the Exchange Act and similar state law claims.  These add-on claims fail for the following reasons:

*First*, Plaintiffs allege RICO claims based entirely upon securities fraud allegations copied from the Class Action and pending individual actions.  Plaintiffs seek to transform allegations of securities fraud and descriptions of ordinary business practices into a nefarious criminal scheme.  But that scheme never existed and the only purpose of these baseless claims is to allow Plaintiffs to seek treble damages.  Plaintiffs cannot state a RICO claim, however, because a RICO enterprise must exist separate and apart from the alleged pattern of racketeering activity and the complaints make clear that the alleged "enterprise" and "pattern of racketeering activity" are one and the same.  For example, the complaints expressly allege that the "enterprise" members "associated together *for the purpose of carrying out the pattern of*

---

[1]   Pursuant to the Stipulation and Order entered on October 18, 2017 and the Stipulations and Proposed Orders filed on December 6, 2017, Defendants are concurrently filing Partial Motions to Dismiss the Complaints, and an omnibus supporting brief, in the following related matters: (1) *Lord Abbett Investment Trust v. Valeant Pharms. Int'l, Inc.*, No. 17 Civ. 6365 ("*Lord Abbett*"); (2) *The Boeing Co. Emp. Ret. Plans Master Trust v. Valeant Pharms. Int'l, Inc.*, No. 17 Civ. 7636 ("*Boeing*"); and (3) *Public Emps. Ret. Sys. of Miss. v. Valeant Pharms. Int'l, Inc.*, No. 17 Civ. 7625 ("*Mississippi*").

*racketeering activity alleged*." *Lord Abbett* Compl. ¶ 41 (emphasis added).  The attempts to allege a RICO enterprise also fail because the complaints do not allege that the enterprise had an organizational or decision-making structure and fail to plead a cognizable injury.  While the *Lord Abbett* Plaintiffs gratuitously reference a massive decline in Valeant's stock price and market capitalization (*see id.* ¶¶ 14, 77, 402), Plaintiffs never owned Valeant stock.  Rather, the *Lord Abbett* Plaintiffs allege that they are former holders of Valeant debt securities which they do not even allege Valeant defaulted on or that Valeant failed to make a single interest payment.

*Second*, the *Lord Abbett* and *Boeing* Plaintiffs' Section 18 claims are deficient.  As an initial matter, the claims are time-barred because Plaintiffs did not commence these actions within the one-year statute of limitations.  The allegations concern actions that occurred no later than June 2016, but these Plaintiffs waited until August 2017 and September 2017, respectively, to file suit.  Furthermore, Section 18's statute of repose bars claims premised upon purchases more than three years before each Complaint, and claims premised upon Valeant's filings made more than three years before the actions were filed.

Plaintiffs also fail to adequately plead actual reliance for their Section 18 claims.  The *Boeing* Plaintiffs do not attempt to plead actual reliance on Valeant's filings at all, and the *Lord Abbett* Plaintiffs' purported "eyeball reliance" does not suffice because they do not identify a particular transaction made in reliance on a particular document.  These are fatal deficiencies for the Section 18 claims.

*Third*, the *Lord Abbett* and *Boeing* Plaintiffs' remaining state-law claims for negligent misrepresentation and common law fraudulent inducement are preempted by the Securities Litigation Uniform Standards Act ("SLUSA").  These claims also fail because they do not sufficiently plead actual reliance on any supposedly false or misleading statements.

Accordingly, and as set forth below, Defendants respectfully request that the Court dismiss with prejudice Counts I, II, and III of the *Lord Abbett, Boeing*, and *Mississippi* complaints, and Counts V, VII, and VIII of the *Lord Abbett* and *Boeing* complaints. These superfluous claims should be dismissed so that these cases proceed in a focused, efficient manner in parallel with the Class Action.

## BACKGROUND[2]

In September 2015, following news reports about price increases of certain specialty drugs, the government began investigating drug-pricing practices by drug manufacturers, including Valeant. *Lord Abbett* Compl. ¶ 250. The next month, news outlets and investors holding short positions in Valeant stock published reports alleging deceptive sales practices by Philidor, a pharmacy with which Valeant had a limited commercial relationship. *Id.* ¶¶ 255, 259, 266. Meanwhile, stock prices of pharmacy companies, including Valeant, dropped. On October 22, 2015, an initial securities class action complaint was filed, asserting claims based on the same core facts alleged here: alleged misrepresentations regarding Valeant's reliance on acquisitions, the use of extraordinary price increases and patient assistance programs, and Valeant's alleged use of a concealed network of "captive" pharmacies related to Philidor. *See Potter v. Valeant Pharms. Int'l, Inc.*, No. 15 Civ. 7658, Dkt. No. 1 at ¶¶ 6, 62–65. Multiple complaints followed, including the consolidated Class Action complaint and ten other securities opt-out actions filed prior to the first of these actions.

---

[2] This background is drawn from the allegations in the Complaints, which are accepted as true for purposes of these motions to dismiss only, and from other documents properly considered on a motion to dismiss. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). For ease of reference, when referencing Plaintiffs' allegations, this brief generally cites only to the *Lord Abbett* Complaint. Unless otherwise noted, the other two complaints contain the same allegations.

Plaintiffs are sophisticated investment funds actively managed by experienced fund managers. *Lord Abbett* Compl. ¶¶ 18–32; *Mississippi* Compl. ¶ 18; *Boeing* Compl. ¶ 367–69. Between March 1, 2013, and October 5, 2015, the *Lord Abbett* Plaintiffs purchased an unspecified number of Valeant debt securities ("Valeant Notes") in return for fixed returns, ranging from 5.375 to 7.5% interest, and which were to mature beginning as early as 2018. *Lord Abbett* Compl. ¶ 33. The *Mississippi* Plaintiffs purchased an unspecified quantity of certain Valeant Notes and common stock between June 27, 2013 and April 12, 2016. *Mississippi* Compl. ¶ 19. The *Boeing* Plaintiffs also purchased certain Valeant Notes and an unknown amount of Valeant stock between January 10, 2015 and March 23, 2016. *Boeing* Compl. ¶ 19. The offering memoranda accompanying the Valeant Notes indicated that "[t]here is no public trading market for the notes" and that Valeant "do[es] not intend to apply for a listing of the notes on any national securities exchange." *See, e.g.*, Ex. 1 (Sept. 2010 Mem.) at 11; Ex. 2 (Oct. 2012 Mem.) at 13; Ex. 3 (July 2013 Mem.) at 16; Ex. 4 (Dec. 2013 Mem.) at 9; Ex. 5 (Jan. 2015 Mem.) at 9; Ex. 6 (Mar. 2015 Mem.) at 20.[3] Instead, Valeant pledged to pay interest on the Valeant Notes at fixed rates, twice yearly, until maturity. *E.g.*, Ex. 3 (July 2013 Mem.) at 1.

Plaintiffs' theory of harm rests on the unsupported assumption that their investments were devalued by Valeant's conduct. According to Plaintiffs, they purchased Valeant Notes at prices that were inflated by Defendants' misrepresentations in financial statements, SEC filings, public earnings calls and investor conferences. *Lord Abbett* Compl. ¶¶ 6, 10, 47. Plaintiffs claim the value of these Notes "collapsed" once "the market learned the truth about Valeant." *Id.* ¶ 14. The *Lord Abbett* Plaintiffs claim they were injured when they chose to liquidate their Valeant

---

[3]   Citations to "Ex." refer to the Declaration of Richard Hernandez in Support of Valeant and Robert Rosiello's Partial Motions to Dismiss Plaintiffs' Complaints, dated December 6, 2017.

Notes prior to maturity.  *See id.* ¶ 299.  The *Boeing* and *Mississippi* Plaintiffs do not allege they ever sold their Valeant Notes for a loss.  None of the Plaintiffs allege that Valeant defaulted on the Valeant Notes, missed a principal or interest payment, or that Plaintiffs ever received even a penny less than the payments to which they were entitled as noteholders.

### A.    The Alleged Securities Violations

Based on the same facts underlying their RICO claims, Plaintiffs allege Defendants violated securities laws by (1) failing to disclose that Valeant's growth was based on price increases and was not "organic," (2) concealing the relationship with Philidor; and (3) thereby inflating Valeant's earnings.  *Lord Abbett* Compl. ¶¶ 44, 50.

Plaintiffs attack Valeant's use of price increases, but concede that an October 4, 2015 *New York Times* article "reported that extraordinary price increases on eight Valeant drugs accounted for approximately 7% of the Company's revenue and 13% of its earnings . . . , and that Valeant raised the prices on its branded drugs nearly five times as much as its closest competitor." *Id.* ¶ 254.[4]  That article reported that "Valeant's habit of buying up existing drugs and raising prices aggressively, rather than trying to develop new drugs, has also drawn the ire of lawmakers and helped stoke public outrage." Ex. 7 (Pollack & Tavernise, *Valeant's Drug Price Strategy Enriches It, but Infuriates Patients and Lawmakers*, N.Y. TIMES, Oct. 4, 2015) at 2. The article concluded that Valeant was "known" for its controversial practices, based in part on Valeant's "regulatory filing for the second quarter [in which] Valeant said that its growth in the United States and other developed markets 'was driven primarily by price' not by increased

---

[4]    Valeant will not repeat here the underlying factual allegations that were addressed by this Court in its April 28, 2017 Memorandum Opinion in the Class Action.  Rather, Valeant notes only those pertinent to the distinct arguments it makes with respect to the *Lord Abbett* and *Boeing* Section 18, common law fraud, and negligent misrepresentation claims.

volume." *Id.* at 6.  This was not a new disclosure; it was made quarterly between April 2013 and June 2015.[5]  In other words, the public understood Valeant's disclosures, starting as early as Valeant's 2013 10-K, as unambiguously informing investors of the sources of Valeant's growth.

The complaints also allege that Defendants "concealed . . . Valeant's control over Philidor and other captive pharmacies." *Lord Abbett* Compl. ¶ 44.  The complaints make clear, though, that this information was announced no later than October 2015.  "On October 19, 2015, the market learned more about Valeant's dependence on price increases, its controlling interest in Philidor, and a related network of specialty pharmacies[.]" *Id.* ¶ 256.  On October 26, 2015, Valeant filed its Form 10-Q for the third quarter of 2015 and released a 90-page PowerPoint presentation on Philidor.  *Id.* ¶ 233; Ex. 17 (10-Q 3Q 2015) at 38; Ex. 18 (Oct. 26, 2015 Presentation).  Valeant also announced the establishment of an ad hoc committee ("AHC") supported by independent advisors "to review allegations related to the Company's business relationship with Philidor and related matters."  Ex. 17 (10-Q 3Q 2015) at 38.  Then, on October 28, 2015, *Bloomberg* reported on Philidor's purported sales tactics and that the pharmacy used "'back door' tactics to increase payments." *Lord Abbett* Compl. ¶ 282.  Two days later, Valeant announced that it was severing ties with Philidor.  *Id.* ¶ 284; Ex. 19 (Oct. 30, 2015 Press Release).  By February 18, 2016, the *Lord Abbett* Plaintiffs had "liquidated their positions in Valeant notes." *Lord Abbett* Compl. ¶ 299.  On March 21, 2016, Valeant filed a Form 8-K and restated its revenue following review and findings by the AHC.  *Id.* ¶ 216.  Plaintiffs allege that "more facts" continued to be disclosed throughout the "first half of 2016," but do not identify any statements made by Defendants after June 7, 2016.  *Id.* ¶¶ 300, 306.  Crucially, Plaintiffs

---

[5]   *See* Ex 8 (2013 10-K) at 35; Ex. 9 (2014 10-K) at 34; Ex. 10 (10-Q 2Q 2013) at 42; Ex. 11 (10-Q 3Q 2013) at 53; Ex. 12 (10-Q 1Q 2014) at 38; Ex. 13 (10-Q 2Q 2014) at 44–45; Ex. 14 (10-Q 3Q 2014) at 47; Ex. 15 (10-Q 1Q 2015) at 34; Ex. 16 (10-Q 2Q 2015) at 39.

waited more than a year after that time to file their cases; the *Lord Abbett* Plaintiffs on August

23, 2017, and the *Boeing* and *Mississippi* Plaintiffs on September 28, 2017.

### B.     The Alleged RICO Violations

Plaintiffs parrot their RICO theory from the class action brought by third-party payors

against Valeant under the federal RICO statute.  *In re Valeant Pharms. Int'l, Inc. Third-Party*

*Payor Litig.*, 16-cv-03087 (D.N.J.) (the "TPP Suit").  As in the TPP Suit, Plaintiffs endeavor to

hold Defendants vicariously liable for the alleged wrongful acts of Philidor, Philidor's CEO

Andrew Davenport, and Gary Tanner.  However, Plaintiffs have not named Philidor,  Davenport,

or Tanner as defendants in this case, although they are alleged to be members of the "enterprise."

*Lord Abbett* Compl. ¶¶ 63–67.

While the complaints mention that Davenport and Tanner were criminally indicted earlier

this year, (*id.* ¶ 13), Plaintiffs omit that Tanner was criminally charged for *concealing*

*information from* Valeant management—not working *with* Valeant management to defraud

investors.  *See United States v. Tanner*, 16-mj-7338 (S.D.N.Y.), Dkt. No. 66.  By glossing over

this crucial fact, Plaintiffs make allegations about *Tanner* and suggest that Valeant directed his

activities.  *E.g.*, *Lord Abbett* Compl. ¶ 96 ("To conceal the close ties between Valeant and

Philidor, *Tanner*, and many other Valeant employees conducting work on behalf of Philidor,

used aliases.") (emphasis added); *id.* ¶ 97 (concluding "Valeant executives were aware of, and

indeed directed and facilitated Philidor's operations," because Tanner's supervisor once toured

Philidor).

In furtherance of their RICO agenda, Plaintiffs allege an enterprise of "legally distinct"

entities that consists of all named Defendants, as well as Tanner and other persons and entities

not named as defendants.  *Id.* ¶¶ 37, 42–62.  According to Plaintiffs, beginning no later than

January 2013, the enterprise members "associated together for the purpose of carrying out the

pattern of racketeering activity alleged" in the complaints.  *Id.* ¶¶ 41, 77.[6]  Plaintiffs state the

enterprise's *raison d'etre* was to "create and disseminate false and misleading statements and

information concerning Valeant and its operations, with the objective of misleading investors"

and "improperly inflating the price of Valeant securities."  *Id.* ¶¶ 408, 410.  Though the

complaints suggest the named Defendants, "among others," "operated, managed and controlled"

the enterprise, (*id.* ¶ 406), the complaints do not detail the means by which Defendants carried

out their alleged coordination of the enterprise.

Plaintiffs also generically allege that Defendants and "various" unnamed entities

conspired to violate RICO.  *Id.* ¶¶ 423–24.  Other than reciting the elements of a RICO

conspiracy claim, the complaints fail to allege any facts supporting Plaintiffs' claim that

Defendants actually agreed to participate in a RICO conspiracy.  Instead, Plaintiffs fall back on

allegations of innocuous parallel business conduct to support their conclusion that such conduct

was "mutually understood, agreed-upon, and coordinated."  *Id.* ¶ 77; *see, e.g.*, *id.* ¶ 43 (Valeant

"applied a critical new sales strategy known internally as alternative fulfillment"); *id.* ¶ 52

(Rosiello was involved in Valeant's "growth-by-acquisition" and "[alternative fulfillment]

strategies"); *id.* ¶ 64 (Philidor "was devoted to dispensing Valeant's [] drugs"); *id.* ¶ 73

(PricewaterhouseCoopers ("PwC") provided Valeant's "audit opinion that accompanied

Valeant's year-end financial statement").

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter" that

"state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[6]   Rosiello, one of the individuals alleged to have coordinated the enterprise, did not join
      Valeant until July 2015, (*Lord Abbett* Compl. ¶ 37), two-and-a-half years after the inception
      of the supposed enterprise.

(2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## **ARGUMENT**

## **I.    PLAINTIFFS FAIL TO STATE NEW JERSEY RICO CLAIMS**

To state a claim for violation of New Jersey's RICO statute, N.J. Stat. Ann. § 2C:41-1 *et seq.* ("New Jersey RICO"), a plaintiff must allege:  "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *Galicki v. New Jersey*, 2016 WL 4950995, at *22 (D.N.J. Sept. 15, 2016).[7]  RICO claims predicated on acts of fraud are subject to the strict pleading standard of Fed. R. Civ. P. 9(b).  *See Morales v. Superior Living Prods., LLC*, 398 F. App'x 812, 814 (3d Cir. 2010); *Fimbel v. Fimbel Door Corp.*, 2014 WL 6992004, at *6 (D.N.J. Dec. 10, 2014) ("[A] claimant pleading a NJRICO violation must comport with Rule 9(b)'s heightened pleading requirements for fraud.").  Rule 9(b) requires claims based on fraud to "state with particularity the circumstances constituting the fraud."  This requires, "at a minimum, that plaintiffs support their allegations of [] fraud with all

---

[7]    Because New Jersey modeled its RICO statute after the federal statute, New Jersey courts "heed federal legislative history and case law in construing [New Jersey's] statute." *State v. Ball*, 141 N.J. 142, 156 (1995).

of the essential factual background that would accompany 'the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002), *overruled on other grounds by Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  These demanding standards are especially appropriate for RICO claims because of the "relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010) (internal citations omitted).  In light of that risk, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (internal citations omitted).

### A.      Plaintiffs Fail To Plead An Enterprise

Plaintiffs' attempts to transform garden-variety securities fraud claims into a RICO claim fail because Plaintiffs cannot plead a viable RICO enterprise.  The alleged "enterprise" is simply a vehicle to seek treble damages, but its existence is belied by the complaints.

#### 1.      The complaints negate the existence of a RICO enterprise.

The complaints allege that the so-called "enterprise" was formed "for the purpose of carrying out the pattern of racketeering activity alleged" in the Complaint.  *Lord Abbett* Compl. ¶ 41.  Such allegations fail as a matter of law.  New Jersey requires a RICO enterprise that exists separate and apart from the pattern in which it allegedly engaged.  *Ball*, 141 N.J. at 161–62 ("[U]nder the RICO Act, 'enterprise' is an element separate from the 'pattern of racketeering activity,' and the [plaintiff] must prove the existence of both in order to establish a RICO violation.").  When a plaintiff pleads that the alleged enterprise was formed *for the purpose of* perpetrating the alleged pattern of wrongful acts, the enterprise and pattern of racketeering are one and the same and the enterprise prong cannot be satisfied as a matter of law.  *See id.*; *United*

*States v. Turkette*, 452 U.S. 576, 583 (1981) (holding the "existence of an enterprise at all times remains a separate element which must be proved" and "the enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages.").

Plaintiffs allege the existence of an enterprise composed of Valeant, Valeant's Board of Directors and Audit Committee members, Philidor and Philidor-related individuals, PwC, and various third parties. *Lord Abbett* Compl. ¶¶ 42–76. However, Plaintiffs' allegations make clear that the alleged enterprise has no existence separate from the pattern of racketeering activity. Indeed, Plaintiffs expressly plead that the enterprise consists of "legally distinct but associated-in-fact pharmaceutical companies, specialty pharmacies, auditors, individuals, and others *who associated together for the purpose of carrying out the pattern of racketeering activity alleged herein . . . .*" *Id.* ¶ 41 (emphasis added). Plaintiffs similarly allege that the "distinct and independent" members of the enterprise came together "with a common purpose" to carry out a pattern of alleged wrongful acts. *Id.* ¶ 77. Plaintiffs further directly link the identity of the enterprise with the pattern of wrongful acts by alleging that it "was the purpose of the Enterprise to create and disseminate false and misleading statements and information concerning Valeant and its operations, with the objective of misleading investors." *Id.* ¶ 408; *see also id.* ¶ 410 (alleging that "Defendants . . . made misrepresentations or omissions of material fact for the purpose of improperly inflating the price of Valeant securities . . .").  In short, Plaintiffs allege that Defendants and non-parties came together for the purpose of committing securities fraud, the very act that is alleged to constitute the pattern of racketeering activity.

Numerous federal courts in New Jersey have dismissed RICO actions that suffer from this fatal pleading defect. For example, in *300 Broadway v. Martin Friedman Assocs., P.C.*,

11

2009 WL 3297558, at *1 (D.N.J. Oct. 13, 2009), plaintiffs alleged that defendants violated RICO by conspiring together to defraud plaintiffs and deprive them of their ownership interests in a particular investment.  The plaintiffs claimed that, like here, the defendants constituted an "association in fact" that "acted in concert with specific, well-defined goals in the enterprise, to achieve a common goal of appropriating assets from [plaintiffs] . . . ."  *Id.* at *3.  In dismissing the RICO claims, the Court focused on plaintiffs' allegation that the "goal" of the enterprise was to divest plaintiffs of their ownership interests, which failed to plead that the enterprise was distinct from the racketeering acts it was alleged to have performed.  *Id.* at *6.  Like the allegation in *300 Broadway*, Plaintiffs confirm that the alleged enterprise was "indistinguishable from what it was formed to do," which compels dismissal of the RICO claim.  *Id.*; *see also Galicki*, 2016 WL 4950995, at *26 n.28 ("[I]t is not possible for the Court to decipher any meaningful difference between the purported enterprise and the pattern . . . ."); *Parrino v. Swift*, 2006 WL 1722585, at *3 (D.N.J. June 19, 2006) ("Plaintiffs have thus alleged that the conspiracy to defraud was the same thing as the enterprise, and the enterprise alleged thus does not have an existence separate and apart from the pattern of racketeering activity."); *Hollis-Arrington v. PHH Mortg. Corp*., 2005 WL 3077853, at *8 (D.N.J. Nov. 5, 2005) ("Plaintiffs allege that all of the Defendants comprise the 'racketeering enterprise' and that the common purpose of the enterprise was to defraud unsuspecting borrowers . . . .  According to Plaintiffs' own allegations, these specific violations are the sole reason for the existence of the Enterprise, thus, Plaintiffs . . . have negated the existence of an enterprise separate and apart from the pattern of activity at issue here.").

Plaintiffs attempt to salvage their claim with the bald assertion that the "Enterprise has an existence beyond that which is merely necessary to commit predicate acts."  *Lord Abbett*

Compl. ¶ 406.  But such conclusory allegations are entitled to no weight, and the mere recitation

of the elements of a RICO claim cannot erase the allegations that contradict that assertion.  *See*

*Hollis-Arrington*, 2005 WL 3077853, at *8 (finding plaintiff's allegation that "[t]he enterprise is

an entity separate and apart from the pattern of activity in which it engages [sic]" to be

"conclusory and merely repeats verbatim the third element needed to establish the existence of

an enterprise").

> 2.      <u>Plaintiffs do not plead an enterprise with a discernable organization or</u>
>         <u>decision-making structure.</u>

Even if Plaintiffs had alleged that the enterprise is distinct from the pattern of wrongful

acts, they still fail to plead a RICO enterprise with an ongoing organization or structure.  A

RICO enterprise must have "an ascertainable structure supporting the inference that the group

engaged in carefully planned and highly coordinated criminal activity."  *Galicki*, 2016 WL

4950995, at *22 (citing *Ball*, 141 N.J. at 162).  It is not enough for Plaintiffs to allege certain acts

that individuals carried out and summarily conclude that there was a high degree of collective

coordination and planning.  *See In re Refco Inc. Secs. Litig.*, 826 F. Supp. 2d 478, 533–34

(S.D.N.Y. 2011) (holding plaintiffs "have not sufficiently pled an organization under NJRICO"

where there were no allegations describing the "division of labor, who agreed to do what, or

whether they coordinated their activity between themselves or with other members of the

enterprise").

Plaintiffs fail to meet their pleading burden.  Plaintiffs allege that the "Enterprise was

operated, managed, and controlled by, among others, Valeant, Pearson, Schiller, Rosiello, Carro,

Philidor, Andrew Davenport, and PwC," (*Lord Abbett* Compl. ¶ 406), but this allegation is

simply a list of names.  Plaintiffs claim that the enterprise members "have been engaged in a . . .

coordinated campaign of racketeering activity," without identifying a single fact that speaks to

the manner, extent, and method of coordination.  *See id.* ¶ 77.  Just like the defective complaint

in *Refco*, the limited allegations in Plaintiffs' complaints about the enterprise's organization

amount to claims that defendants agreed to misrepresent financial statements and carry out other

supposedly deceptive business activities.  *E.g.*, *id.* ¶¶ 77, 152, 407; *see also In re Refco*, 826 F.

Supp. 2d at 478.  The complaints say nothing about the alleged enterprise members' "knowledge

of the objectives of their association, how the participants associated with each other, whether

the participants each performed discrete roles in carrying out the scheme, the level of planning

involved, how decisions were made, [or] the coordination involved in implementing decisions."

*Ball*, 141 N.J. at 162–63.  Absent specific allegations indicating a "high degree of planning,

cooperation and coordination," Plaintiffs fail to plead the required formal structure.  *See id.*

### B.  Plaintiffs Have Not Alleged RICO Injuries Related to the Valeant Notes

New Jersey confers a private right of action on "any person damaged in his business or

property by reason" of a RICO violation.  N.J. Stat. Ann. § 2C:41–4.  Plaintiffs must allege that

the RICO violation was a "but for" and proximate cause of their injuries; harm caused only

indirectly by the predicate acts will not suffice.  *Fimbel*, 2014 WL 6992004, at *6 (citing

*Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. App. Div. 1995)).  The "central

question" is whether Defendants' conduct led directly to Plaintiffs' injuries.  *Dist. 1199P Health

& Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 523 (D.N.J. 2011) (citing *Anza v. Ideal

Steel Supply Corp.*, 547 U.S. 451, 456 (2006)).

Injuries premised on the supposed decline in value of Valeant's Notes fail because a

plaintiff "cannot establish a RICO injury" until the debtor-defendant "failed to perform under the

parties' contractual arrangement."  It is only at that point that "it becomes clear that the plaintiff

will not get the benefit of the bargain."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 489–90 (3d Cir. 2000)

(citation omitted); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 263

(S.D.N.Y. 1997) (RICO injury is speculative when "contractual or other legal remedies remain which hold out a 'real possibility' that the debt, and therefore the injury, may be eliminated"), *aff'd*, 154 F.3d 56 (2d Cir. 1998); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("[A] plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated.").

The terms of the Valeant Notes assured Plaintiffs fixed interest payments and the redemption of all principal upon maturity.  *See, e.g.* Ex. 3 (July 2013 Mem.) at 16; Ex. 4 (Dec. 2013 Mem.) at 9; Ex. 5 (Jan. 2015 Mem.) at 9; Ex. 6 (Mar. 2015 Mem.) at 20.  The complaints do not allege that Valeant failed to perform those obligations.  Rather, the complaints make clear that Plaintiffs are—at most—creditors of Valeant who plead neither frustration of their contractual rights nor that their debt was uncollectible, which is insufficient for alleging a RICO injury.

The *Lord Abbett* Plaintiffs' purported injury is particularly dubious as it is unrelated to the alleged RICO violation or the terms of the Valeant Notes.  The *Lord Abbett* Plaintiffs insist they suffered an injury based on a decline in the value of Valeant's *common stock*, a wholly different asset than the one they say they purchased.  *Lord Abbett* Compl. ¶ 6.  Plaintiffs allege that "when the market learned the truth," Valeant's common stock "plummeted," and that they were harmed when "the value of [Valeant's] debt securities similarly collapsed."  *Id.* ¶¶ 14, 393.  Yet these Plaintiffs do not claim that the Valeant Notes were collateralized by Valeant stock, nor that a specific exchange valued the Valeant Notes using Valeant's stock price as a benchmark.  Thus, even if Defendants' alleged conduct impacted the price of Valeant's stock, "the required

15

direct nexus between the act and the injury"—a corresponding deterioration of the Valeant Notes—"is lacking." *Fagan v. Fischer*, 2016 WL 347318, at \*14 (D.N.J. Jan. 28, 2016).[8]

At bottom, Plaintiffs ask this Court to find that Plaintiffs acquired a right to treble damages for their decisions to prematurely sell the Valeant Notes at a loss. New Jersey RICO was not intended to serve as vehicle for opportunistic investors to try to triple their money in the court system. *See* N.J. Stat. Ann. § 2C:41-1.1(c) (explaining the public policy underlying RICO as the elimination "of organized crime type activities which are substantial in nature").

### C.   The Failure To Plead a RICO Claim Dooms Plaintiffs' Conspiracy Claims

Because Plaintiffs have not stated a substantive RICO claim, their conspiracy claims also fail. To state a New Jersey RICO conspiracy, a plaintiff must allege "an agreement to violate RICO and the existence of an enterprise." *Ball*, 141 N.J. at 176. Plaintiffs' failure to adequately plead a RICO enterprise is fatal to a conspiracy claim. *See id.*; *see also Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 222 (3d Cir. 2016); *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that conspiracy claims "necessarily must fail if the substantive [RICO] claims are themselves deficient").[9]

---

[8]   Plaintiffs also cannot allege viable RICO injury because they do not and cannot allege that they are direct purchasers of the Valeant Notes. *See* Ex. 5 (June 2013 Offering Circular) at 120. "[D]ownstream indirect purchasers" like Plaintiffs, "insofar as damages are concerned," are not permitted to pursue RICO claims. *See McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 848, 855 (3d Cir. 1996).

[9]   For this reason, Plaintiffs' aiding and abetting RICO claims should also be dismissed. The elements for aiding and abetting liability are: (i) that an independent wrong exist; (ii) that the aider and abettor know of the wrong's existence; and (iii) that substantial assistance be given to effecting that wrong. *See Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (New Jersey adheres to Section 876(b) of the Restatement (Second) of Torts for the civil standard of aiding and abetting liability); *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 162–63 (3d Cir. 1973) (applying Restatement (Second) of Torts § 876(b)). Absent an independent RICO violation, there can be no aiding and abetting liability.

### D.      Plaintiffs Do Not Demonstrate Any Agreement To Violate RICO

The RICO conspiracy claims fail for the additional reason that Plaintiffs have not plausibly alleged any agreement to violate RICO.  *See Ball*, 141 N.J. at 176.  The agreement to violate RICO has two parts.  "One involves the agreement proper, that is, an agreement to conduct or participate in the conduct of the affairs of the enterprise.  The other involves an agreement to the commission of at least two predicate acts."  *Id.*  If either agreement is lacking, there can be no RICO conspiracy violation.  *Id.*

Plaintiffs fail to allege either requirement.  Once again Plaintiffs recite the elements of the claim:  "Defendants and all members of the Enterprise agreed to facilitate the scheme described herein" and "personally committed or agreed to commit two or more fraudulent and illegal racketeering acts and conducted and agreed to conduct the affairs of the Enterprise through the pattern of racketeering activity."  *Lord Abbett* Compl. ¶¶ 423, 425.  These conclusory allegations are not enough.  Plaintiffs "must allege facts to show that each Defendant objectively manifested an agreement to participate . . . in the affairs of a RICO enterprise through the commission of two or more predicate acts."  *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015) (citation omitted).[10]  The complaints here are devoid of the required factual allegations regarding any alleged conspirator's agreement to join the alleged conspiracy or "personally commit" (*Lord Abbett* Compl. ¶ 425) the alleged racketeering violations.  *See Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008) (dismissing RICO claim where plaintiff "has not pled specific facts as to any Defendant's agreement to conspire"); *Miller v. P.G. Lewis & Assoc.*, 2007 WL 316446, at *7 (D.N.J. Jan. 30,

---

[10]   The New Jersey Supreme Court has held the "federal understanding of the RICO conspiracy offense comports with [New Jersey's] traditional treatment of conspiracy."  *Ball*, 141 N.J. at 179.

2007) (New Jersey RICO conspiracy claim could not withstand Rule 12(b)(6) where plaintiff "provide[d] absolutely no evidence to show that [defendants] entered into any agreement").

The limited facts Plaintiffs do allege regarding the supposed conspiracy are contradictory and reveal that there was no agreement to violate RICO. For instance, even though Plaintiffs allege that the "Enterprise existed . . . since at least 2008," (*Lord Abbett* Compl. ¶ 419), Plaintiffs claim that "Defendants and all members of the Enterprise agreed to facilitate the scheme" beginning "as early as January 2013." *See id.* ¶¶ 77, 423. Defendants could not have conspired in 2013 to be part of a RICO enterprise that the same Defendants supposedly formed five years prior. Even excusing the lack of logic, the complaints provide no facts regarding any conduct by any alleged conspirator on or around January 2013 that suggests an agreement to commit RICO violations. In fact, as concerns Rosiello, Plaintiffs concede that he was not even employed by Valeant *until July 2015*, two-and-a-half years after he supposedly "agreed" to participate in the RICO conspiracy. *Id.* ¶ 37.

At most, Plaintiffs' conspiracy allegations amount to descriptions of parallel business conduct by independent entities. Plaintiffs aver that separate and distinct entities each engaged in various types of conduct related to their respective businesses, which, according to Plaintiffs, were deceptive and misleading. For instance, Plaintiffs allege that Valeant "applied a critical new sales strategy known internally as alternative fulfillment," (*id.* ¶ 43), that Rosiello was involved in Valeant's "growth-by-acquisition" and "[alternative fulfillment] strategies," (*id.* ¶ 52), that Philidor "was principally devoted to dispensing Valeant's [] drugs," (*id.*, ¶ 64) and that PwC provided Valeant's "audit opinion that accompanied Valeant's year-end financial statements." *Id.* ¶ 73. From these (and other) descriptions of parallel business activity, Plaintiffs jump to the conclusion that this conduct was criminal racketeering and "mutually understood,

agreed-upon, and coordinated." *Id.* ¶ 77.  But "allegation[s] of parallel conduct," accompanied by nothing more than "a bare assertion of a conspiracy," do not plausibly suggest a conspiracy. *Twombly*, 550 U.S. at 557.  Plaintiffs cannot state a conspiracy claim simply by describing commercial conduct independently undertaken by Defendants in their courses of business and affixing the word "conspiracy" to their descriptions.  Rather, "without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id.*  Plaintiffs have not set forth any facts supporting any "meeting of the minds," and, accordingly, the RICO conspiracy claims should be dismissed.

## II.   THE *LORD ABBETT* AND *BOEING* PLAINTIFFS DO NOT STATE SECTION 18 CLAIMS

### A.   Plaintiffs' Claims Are Untimely

The *Lord Abbett* and *Boeing* Plaintiffs assert Section 18 claims, but these claims are time-barred.  Under Section 18, no action may be maintained "unless brought within one year after the discovery of the facts constituting the cause of action."  15 U.S.C. § 78r(c).  Both complaints make clear that Plaintiffs discovered the facts underlying their Section 18 claims well over a year before bringing suit.  The *Lord Abbett* Plaintiffs liquidated their holdings in the Valeant Notes by February 18, 2016, allegedly because they had suffered losses resulting from Defendants' allegedly false and misleading statements.  *Lord Abbett* Compl. ¶ 299.  The last statement made by Defendants that these Plaintiffs include in their complaints occurred on June 7, 2016.  *Id.* ¶ 306.  All the core allegations in both complaints were made first in the *Potter* Complaint on October 22, 2015, and again in the consolidated Class Action Complaint on June 24, 2016.  *See Potter*, No. 15-cv-7658, at Dkt. Nos. 1, 80.  Yet the *Lord Abbett* Plaintiffs waited more than eighteen months after liquidating their Valeant Notes and more than fourteen months after the latest statement by Defendants that they consider relevant to their claims, and the *Boeing*

Plaintiffs likewise waited over fifteen months after the last relevant factual allegation, to bring their complaints.  These Section 18 claims are therefore facially untimely under Section 18's one-year statute of limitations.

Certain of the *Lord Abbett* and *Boeing* Section 18 claims are also untimely under Section 18's three-year statute of repose, which bars claims not brought "within three years after such cause of action accrued."  15 U.S.C. § 78r(c).  A Section 18 claim "accrues" when the SEC filings at issue are made or when the securities are purchased or sold.  *See Kelley v. Rambus, Inc.*, 2008 WL 1766942, at *5 (N.D. Cal. Apr. 17, 2008) (barring claims based on filings more than three years old); *Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1092 (D. Nev. 2013); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2005 WL 1679540, at *1 n.6 (S.D.N.Y. Jul. 18, 2005) (claims were "time-barred here whether they are accrued from the purchase date or the earlier date of the [SEC filing]").  Accordingly, *Lord Abbett*'s claims based on Valeant filings made prior to August 23, 2014 and *Boeing*'s claims based on filings made before September 28, 2014, including Valeant's 2013 10-K, and all purchases made before those dates, are barred.

Courts in the Third Circuit have unanimously refused to apply the longer statutes of limitations and repose included in the Sarbanes-Oxley Act ("SOX") to Section 18 claims.  *See In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *23 (D.N.J. Mar. 24, 2008) ("This Court is persuaded by courts holding that the SOX statute of limitations is inapplicable to claims under § 18 of the Exchange Act."); *WM High Yield Fund v. O'Hanlon*, 2005 WL 6788446, at *12 (E.D. Pa. May 13, 2005) ("Because Section 18 does not require proof of fraud, [SOX] does not extend the statute of limitations and Plaintiffs' Section 18 claims . . . are barred by the applicable three year limitations period."); *Klawonn v. YA Glob. Invs., L.P.*, 2016 WL 5923435, at *7

(D.N.J. May 6, 2016) ("Section 18 [claims] must be brought within one year after discovery of the facts underlying the violation, and in any event within three years after the violation.").

## B.      Plaintiffs Fail To Meet Section 18's Stringent Reliance Standard

 The Section 18 claims also fail for the independent reason that the *Lord Abbett* and *Boeing* Plaintiffs have not alleged actual reliance on the filings at issue.  On a Section 18 claim, courts require "'a purchaser's actual reliance on the fraudulent statement . . . , as opposed to the constructive reliance, or fraud-on-the-market theory available under § 10(b).'"  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006) (citation and quotation omitted).[11] This stricter reliance requirement exists because "the courts, not Congress, created the implied private cause of action under Rule 10b-5" and have therefore "been free to redefine [the reliance] requirement in order to promote Rule 10b-5's objectives."  *In re Genentech, Inc. Sec. Litig.*, 1989 WL 106834, at *5 (N.D. Cal. July 7, 1989); *see also In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 798 (S.D. Cal. 1990) ("In contrast [with § 10(b)], Congress created the express reliance requirement in § 18.  Courts have consistently interpreted the section to require actual reliance.").

Applying *Suprema*, courts dismiss Section 18 claims where "the allegations of reliance are cursory and general, lacking the specificity that the Third Circuit [in *Suprema*] requires to state a claim . . . [and] fail to plead facts probative of actual reliance on specific false

---

[11]   The Complaints each invoke the "fraud-on-the-market" presumption of reliance.  Plaintiffs bringing securities fraud claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 may only invoke the "fraud on the market" theory to plead reliance to the extent that they "traded the stock between the time the misrepresentations were made and when the truth was revealed."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014).  Here, the Complaints demonstrate that Valeant's alleged omissions were fully disclosed to the market by the end of October 2015.  Nevertheless, Plaintiffs in the *Boeing* and *Mississippi* actions seek to recover damages in connection with purchases that occurred between November 2015 and April 2016.

statements." *Witriol v. Conexant Sys., Inc.*, 2006 WL 3511155, at *7 (D.N.J. Dec. 4, 2006); *see also Special Situations Fund III QP, L.P. v. Deloitte Touche Thomatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 444 (S.D.N.Y. 2014) (dismissing Section 18 claims where plaintiffs failed to "identify . . . *specific transactions* that ensued as a result of Plaintiffs' purported 'eyeball' reliance on [the filings]") (emphasis added); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 309–10 (S.D.N.Y. 2014) (dismissing Section 18 claims where plaintiffs failed to "link [their] review of any particular statements in [the 10-K] or any other document to any actual purchases of Bear Stearns securities *and [did] not identify a particular transaction that it allegedly made in reliance on the document or any other document.*") (emphasis added).

Here, the *Lord Abbett* and *Boeing* Plaintiffs do not come close to satisfying this standard. The *Lord Abbett* Plaintiffs allege only that they purchased Valeant securities "between March 1, 2013 and October 5, 2015," but do not specify which purchases were made in reliance on which statements in which filings. *Lord Abbett* Compl. ¶ 33. The *Boeing* Plaintiffs allege only that they made unspecified purchases of Valeant securities over a fourteen-month period. *Boeing* Compl. ¶ 19. Section 18 allegations based on purchases that "occurred over a year-long period" and where a plaintiff "does not identify a particular transaction that it allegedly made" in reliance on filed documents do not state a claim. *Bear Stearns*, 995 F. Supp. 2d at 309. Indeed, the *Lord Abbett* Complaint's blanket allegation that Plaintiffs' investment analyst "read and actually relied upon" Valeant's filings "to the extent each such document was on file with the SEC at the time" when making "*each* purchase on behalf of Plaintiffs," (*Lord Abbett* Compl. ¶ 444) (emphasis added), simply thumbs a nose at the specificity requirement and is exactly the type of "generic" allegation rejected by courts. *See Bear Stearns*, 995 F. Supp. 2d at 309 ("[Plaintiff's] generic response that 'every . . . purchase of Bear securities was in reliance on the specific

misrepresentations and omissions identified in the Complaint' is not sufficiently particularized."). The *Boeing* Plaintiffs allege only that their investment managers "read, reviewed, and relied on" Valeant's filings, but make no effort to allege any actual or "eyeball" reliance. *Boeing* Compl. ¶¶ 428–29. *See Suprema*, 438 F.3d at 284 (dismissing Section 18 claims based on cursory allegations that plaintiffs "received, reviewed, actually read, and relied upon" filings).

Further illustrating the generic nature of Plaintiffs' reliance allegations is their reference to their investment managers' reliance on Defendants' "other public statements" made in calls with investors, at conferences and in press releases in support of their Section 18 claims. *Lord Abbett* Compl. ¶¶ 383, 444; *Boeing* Compl. ¶¶ 368, 429. Any reliance on these "other" statements is irrelevant to Section 18 liability which can only be premised on statements in documents *filed* with the SEC. 15 U.S.C. § 78r(a).[12]

## III.    THE PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL

The *Lord Abbett* and *Boeing* Plaintiffs also bring two causes of action under New Jersey common law:  (1) common law fraud/fraudulent inducement (Count VII) and (2) negligent misrepresentation (Count VIII).  Both claims should be dismissed because they are (i) preempted by SLUSA; and (ii) even if not preempted, they fail to state a claim.

---

[12]    Additionally, the alleged misstatements in Valeant's quarterly reports are subject to a safe harbor exempting "financial information" furnished in 10-Qs from Section 18 liability.  SEC regulations are clear: "The financial information required by Part I of Form 10-Q shall not be deemed to be 'filed' for the purpose of Section 18 of the Act . . . ." 17 C.F.R. § 240.13a-13(d).  "Thus, plaintiffs may not proceed with a Section 18 claim based on any disclosure contained in [defendant]'s quarterly reports on Form 10-Q." *In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 135 (D. Mass. 2003) (citing 17 C.F.R. § 240.13a-13(d)); *see also In re Able Labs.*, 2008 WL 1967509, at *25 ("SEC regulations specifically exempt certain filings from the provisions of § 18—such as . . . part I of Form 10-Q . . . .").

A.   **SLUSA Preempts Plaintiffs' Negligent Misrepresentation and Common Law Fraudulent Inducement Claims**

"By 1998, Congress concluded that plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions in state rather than federal court.  SLUSA was designed to close this perceived loophole by authorizing . . . federal preemption of certain state court securities class actions."  *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005).  "Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards."  *Id.*

To further that goal, SLUSA "provides that '[n]o covered class action' based on state law and alleging 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security' 'may be maintained in any State or Federal court by any private party.'"  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71,74 (2006) (quoting 15 U.S.C. § 78bb(f)(1)(A)).  Thus, a claim is preempted by SLUSA where it "(1) make[s] use of a procedural vehicle akin to a class action, and (2) allege[s] a misrepresentation or deceptive device in connection with a securities trade."  *LaSala v. Bordier et Cie*, 519 F.3d 121, 128 (3d Cir. 2008).

1.   This Action Constitutes A "Covered Class Action" Under SLUSA.

A "covered class action" includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  15 U.S.C. § 78bb(f)(5)(B).  Both criteria are met here.

*Stichting Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783 (D.N.J. Aug. 1, 2012), is on point and supports dismissal.  *Stichting* addressed an individual investor's securities action against a pharmaceutical company that was filed on the heels of a "largely identical" class action

complaint. *Id.* at *1.  Like the complaints here, the *Stichting* opt-out complaint included common law fraud and negligent misrepresentation claims absent from the class action complaint. *Id.*  Applying SLUSA, the *Stichting* court found that the opt-out complaint was "certainly one of a group of lawsuits which assert common questions of law and fact and which together seek damages on behalf of more than 50 persons" when considering the related class action and other individual actions pending before the same judge. *Id.* at *14.  The same is true here:  these actions are two of 16 opt-out actions before this Court alleging, as the Class Action alleges, that Valeant made material misrepresentations or omissions about Philidor and related matters in violation of the Exchange Act.

The *Stichting* court also held that the "actions were 'joined, consolidated or otherwise proceed[ing] as a single action for any purpose' so as to meet SLUSA's covered class action definition." *Id.* (quoting 15 U.S.C. § 78bb(f)(5)(B)(ii)(II)).  The court rejected the plaintiff's argument that formal coordination was required to trigger SLUSA's statutory criteria. *See id.* ("[T]o interpret this language as covering only lawsuits that are formally 'joined or consolidated' would be to render [SLUSA]'s description of the latter category of covered actions—lawsuits that 'otherwise proceed as a single action for any purpose'—entirely redundant.") (quoting *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375 (S.D.N.Y. 2010)); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1347 (11th Cir. 2008) (emphasizing that "consolidation for *any* purpose" is sufficient under the statute) (emphasis added).  Rather, SLUSA's "plain and broad language" defining the levels of coordination "encompasses actions which are coordinated for pre-trial purposes . . . ." *Stichting*, 2012 WL 3235783, at *14.

*Stichting* found the actions to be coordinated because, among other things, (1) all of the actions pending in the District were consolidated before the same judge, and (2) the individual

25

action and the class action "relate[d] to exactly the same subject matter." *Id.* at \*16.  Those

circumstances are also present here.  As the Court has recognized, these actions are three of

sixteen "related civil actions" involving Valeant and "potential overlapping discovery." *E.g.*,

*Lord Abbett* Dkt. No. 33 (Order to Show Cause).  Plaintiffs themselves deemed this case to be

"related" to the Class Action so that they proceed before this Court.  *See Lord Abbett* Dkt. No.

1-1 (Civil Cover Sheet); *Boeing* Dkt. No. 1-1 (Civil Cover Sheet).  The *Amorosa* decision, upon

which *Stichting* heavily relied, made clear that this designation *alone* was sufficient to satisfy

SLUSA's coordination requirement.  *See Amorosa*, 682 F. Supp. 2d at 376 ("The assignment of

[the individual plaintiff's] related case to [the same judge handling the related class action],

where it would necessarily be handled in coordination with the [other related] cases . . . is

enough to make [the] action a 'covered class action' [under] SLUSA.").  Furthermore, along

with plaintiffs in the related civil actions, Plaintiffs agreed to pre-trial coordination by stipulating

to a stay of proceedings other than these motions to dismiss.  *Lord Abbett* Dkt. No. 56

(Stipulation and Order).

Additionally, these cases concern the same subject matter as the other opt-out actions and

the Class Action.  Virtually every allegedly false or misleading statement identified in these

cases is at issue in the Class Action.  Accordingly, SLUSA's requirement that the cases be

coordinated for any purpose is satisfied because the "Individual Actions . . . run parallel to, and

[are] truly in many regards peripheral to the Class Action pending before this Court." *Stichting*,

2012 WL 3235783, at \*17; *see also Amorosa*, 682 F. Supp. 2d at 376.

> 2.   This Action Alleges Misrepresentations In Connection With Trades of
>      Covered Securities.

Plaintiffs predicate their common law fraud claims on the allegation that "Defendants . . .

intended that their misleading statements would induce Plaintiffs to purchase Valeant securities,"

and similarly base their negligent misrepresentation claim on allegations that Defendants made statements "in order to induce Plaintiffs to purchase Valeant securities." *Lord Abbett* Compl. ¶¶ 462, 470. Plaintiffs' claims therefore unquestionably allege a misrepresentation or deceptive device in connection with a securities trade, notwithstanding Plaintiffs' attempt to disclaim allegations of fraud in their negligent misrepresentation claim. *See In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 769–70 (S.D.N.Y. 2003) ("Nothing in [SLUSA] suggests that it bars only state law claims that plead a certain level of scienter. In fact, the legislative history and statutory scheme reveal that the preemption provision is part of a far-reaching Congressional effort . . . to preempt litigation filed in state court as part of an effort to circumvent . . . the [PSLRA]."); *see also Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930 (7th Cir. 2017) ("Every . . . circuit that has addressed the question . . . has held that a plaintiff cannot sidestep SLUSA by omitting allegations of scienter or reliance.").

In addition, Valeant Notes and stock are "covered securities" under SLUSA. A "covered security" includes a security listed on the New York Stock Exchange ("NYSE") and securities "of the same issuer that is . . . a senior security to a security" listed on the NYSE. 15 U.S.C. § 77r(b)(1)(A), (C); *see also id.* § 77p(f)(3). Valeant's stock is traded on the NYSE, (*Lord Abbett* Compl. ¶ 34), and the Valeant Notes' offering circulars state that they are "senior unsecured obligations . . . ranking equally in right of payment with" Valeant's "existing and future unsecured and unsubordinated indebtedness." Exs. 1–6. The Valeant Notes are therefore senior to Valeant's stock. *See Luis v. RBC Capital Markets, LLC*, 2016 WL 6022909, at *6 (D. Minn. Oct. 13, 2016).

### B.  Even If Not Preempted, Plaintiffs Fail to State a Negligent Misrepresentation or Common Law Fraud Claim

"Under New Jersey law, the elements of a negligent misrepresentation claim are: (1) defendant negligently made a false communication of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury." *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008).  "The elements of negligent misrepresentation are essentially the same as those of common law fraud, except negligent misrepresentation does not require scienter."  *Cohen v. Telsey*, 2009 WL 3747059, at *15 (D.N.J. Nov. 2, 2009).  As with a Section 18 claim, common law fraud and negligent misrepresentation claims require a pleading of actual reliance on specific statements for each transaction at issue. *See Kaufman v. i-Stat Corp.*, 165 N.J. 94, 108 (2000) ("The element of reliance is the same for fraud and negligent misrepresentation.");  *Stichting*, 2012 WL 3235783, at *17 n.11 ("Because the fraud-on-the-market theory of reliance is not available under New Jersey law, a plaintiff asserting a fraud or misrepresentation claim must allege that [it] in fact received and considered public statements made by a defendant and was deceived by those statements and/or omissions.").  Plaintiffs' failure to adequately plead reliance under Section 18 is thus similarly fatal to their state law claims.

Plaintiffs' negligent misrepresentation claims are non-actionable for the additional reason that New Jersey courts do not recognize such claims for securities investors.  "A plaintiff seeking to recover for negligent misrepresentation must plead that the defendant owed it a duty of care." *Roll v. Singh*, 2008 WL 3413863, at *20 (D.N.J. June 26, 2008).  A recent decision from this District demonstrates that this is an impossible hurdle for Plaintiffs to clear.  In *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 2015 WL 502039 (D.N.J. Feb. 5, 2015), residential mortgage-backed securities ("RMBS") investors brought negligent misrepresentation claims

against the securities' issuers.  The court noted that the New Jersey Supreme Court has limited

the class of plaintiffs who can sue for negligent misrepresentation "to *particular plaintiffs* . . .

comprising an *identifiable class* with respect to whom defendant knows or has reason to know

are likely to suffer such damages from its conduct."  *Id.* at *5–6 (quoting *People Express Airlines*

*v. Consol. Rail Corp.*, 100 N.J. 246, 263–64 (1985)) (emphasis added).  The *Prudential* court

therefore dismissed the investors' negligent misrepresentation claims, recognizing that because

"the class of all potential RMBS investors" was "literally limitless," the investors were not

members of an "identifiable class" that was "particularly foreseeable."  *Id.* at *6.  That reasoning

applies with equal force here.  *See id.*; *see also Kaufman v. i-Stat Corp.*, 735 A.2d 606, 613 (N.J.

Super. Ct. App. Div. 1999), *rev'd on other grounds*, 165 N.J. 94 (2000) ("[W]e decline to adopt

a rule of liability which would create expansive potential liability for negligent

misrepresentations that may affect the price of securities.").

**<u>CONCLUSION</u>**

Defendants respectfully request that the Court dismiss with prejudice Counts I–III of the

*Lord Abbett, Mississippi, and Boeing* complaints and Counts V, VII, and VIII of the *Lord Abbett*

and *Boeing* complaints.

/s/  *Richard Hernandez*
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice pending*)
Jonathan K. Youngwood (*pro hac vice pending*)
Craig S. Waldman (*pro hac vice pending*)
Daniel J. Stujenske (*pro hac vice pending*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc. and Robert Rosiello*

Dated: December 6, 2017