**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORD ABBETT INVESTMENT TRUST-LORD ABBETT SHORT DURATION INCOME FUND, et al., | |
| Plaintiffs, | Civil Action No. 17-6365 (MAS) (LHG) |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| THE BOEING COMPANY EMPLOYEE RETIREMENT PLANS MASTER TRUST AND THE BOEING COMPANY EMPLOYEE SAVINGS PLANS MASTER TRUST, | |
| Plaintiffs, | Civil Action No. 17-7636 (MAS) (LHG) |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, | |
| Plaintiff, | Civil Action No. 17-7625 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on fifteen motions to dismiss filed in the above matters.[1] Plaintiffs opposed (ECF No. 83)[2] and Defendants (except Pearson)[3] replied (ECF Nos. 99, 100, 101, 102). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below: PricewaterhouseCoopers LLP's ("PwC") motions to dismiss the Section 10(b) claims are granted; Carro's motion to dismiss the Section 10(b) claim in *Lord Abbett* is denied; Valeant Defendants'[4]

---

[1] The motions currently pending before the Court are:

1. *Lord Abbett Investment Trust-Lord Abbett Short Duration Income Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Civ. No. 17-6365 ("*Lord Abbett*"): Partial Motion to Dismiss by Valeant Pharmaceuticals International, Inc. and Robert Rosiello (ECF No. 61).
2. *Lord Abbett:* Partial Motion to Dismiss by Michael Pearson (ECF No. 62).
3. *Lord Abbett:* Partial Motion to Dismiss by Howard B. Schiller (ECF No. 58).
4. *Lord Abbett:* Motion to Dismiss by Tanya Carro (ECF No. 60).
5. *Lord Abbett:* Motion to Dismiss by PricewaterhouseCoopers LLP (ECF No. 59).
6. *The Boeing Company Employee Retirement Plans Master Trust and The Boeing Company Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International, Inc., et al.*, Civ. No. 17-7636 ("*Boeing*"): Partial Motion to Dismiss by Valeant Pharmaceuticals and Robert Rosiello (ECF No. 52).
7. *Boeing:* Partial Motion to Dismiss by Michael Pearson (ECF No. 53).
8. *Boeing:* Partial Motion to Dismiss by Howard B. Schiller (ECF No. 49).
9. *Boeing:* Partial Motion to Dismiss by Tanya Carro (ECF No. 51).
10. *Boeing:* Motion to Dismiss by PricewaterhouseCoopers LLP (ECF No. 50).
11. *Public Employees' Retirement System of Mississippi v. Valeant Pharmaceuticals International, Inc., et al.*, Civ. No. 17-7625 ("*Mississippi*"): Partial Motion to Dismiss by Valeant Pharmaceuticals and Robert Rosiello (ECF No. 50).
12. *Mississippi:* Partial Motion to Dismiss by Michael Pearson (ECF No. 51).
13. *Mississippi:* Partial Motion to Dismiss by Howard B. Schiller (ECF No. 47).
14. *Mississippi:* Partial Motion to Dismiss by Tanya Carro (ECF No. 49).
15. *Mississippi:* Motion to Dismiss by PricewaterhouseCoopers LLP (ECF No. 48).

[2] For ease of reference, record citations refer to *Lord Abbett* unless otherwise specified.

[3] Pearson did not submit his own briefing and instead relied upon the memorandum of law submitted by Valeant. (Not. of Motion, ECF No. 62.)

[4] The "Valeant Defendants" are all Defendants except PwC.

motions to dismiss the RICO claims are denied; PwC's motions to dismiss the RICO claims are granted; Defendants' motions to dismiss the Section 18 claims are denied; and Defendants' motions to dismiss the common law fraud and negligent misrepresentation claims are granted.

## I.    **Background**

These are direct actions arising out of the same facts and circumstances as the class action currently pending before the Court under docket number 15-7658 ("Class Action"). The Court assumes the parties' familiarity with the underlying facts and recites the facts only to the extent necessary to decide these motions. Essentially, Plaintiffs allege that Valeant Pharmaceuticals International, Inc. ("Valeant") and certain executives, namely, Robert Rosiello ("Rosiello"),[5] Howard Schiller ("Schiller"),[6] Michael Pearson ("Pearson"),[7] and Tanya Carro ("Carro")[8] (collectively, "Valeant Defendants") engaged in a "massive, fraudulent scheme" "to artificially inflate the price of Valeant's securities." (Compl. ¶ 1.)[9]  Plaintiffs allege Defendants used "a

---

[5] Rosiello served as Valeant's CFO and an EVP from July 2015 to December 31, 2016. (Compl. ¶ 37.)

[6] Schiller served as Valeant's CFO and an EVP from December 2011 to June 30, 2015. Schiller was also a member of the Board of Directors from September 2012 through June 14, 2016. (Compl. ¶ 36.)

[7] Pearson served as Valeant's CEO from September 2010 through May 3, 2016, a member of the Board of Directors (from February 2008 through May 3, 2016, except when on medical leave from January through February 2016), and Chairman of the Board of Directors (from March 2011 through January 2016). (*Id.* ¶ 35.)

[8] Carro served as Valeant's Corporate Controller. (*Id.* ¶ 38.)

[9] Plaintiffs filed an Amended Complaint in *Lord Abbett* after filing opposition to the motions. (ECF No. 88.) Because there are no substantive changes contained in the Amended Complaint (which only names additional Plaintiffs and identifies additional purchases of Valeant Notes), and because the parties' briefing cites to the original Complaint, the Court will also cite to the original Complaint.

clandestine pharmacy network, deceptive pricing and reimbursement, and fictitious accounting" to perpetrate the fraud. (*Id.*)

Specifically, Plaintiffs allege that Valeant actively mislead investors about the drivers of its growth while relying on a "secret network of controlled pharmacies and deceptive business practices" (*id.* ¶¶ 5, 7, 44, 366, 368-70) to facilitate extreme price-hikes "that a transparent market would not tolerate" (*id.* ¶ 43) and to protect Valeant products from generic competition (*id.* ¶¶ 5-8, 64). Plaintiffs further allege that the Valeant Defendants, together with the help of Valeant's outside auditor, PwC, misled investors in Valeant's financial documents (*id.* ¶¶ 70, 73-74, 123-50). According to Plaintiffs, Defendants made material misrepresentations about Valeant's business, its relationship with Philidor, the drivers of its growth, its compliance with Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Accounting Standards ("GAAS"), and the adequacy of its internal controls. (*Id.* ¶¶ 151-243.) Plaintiffs allege the scheme had a "devastating impact" on Valeant's investors. (*Id.* ¶ 14.) As the truth was revealed about Valeant's practices, the "stock price plummeted . . . more than 90%, and the value of its debt securities similarly collapsed." (*Id.* ¶¶ 14, 116.) Plaintiffs claim that even as the wrongdoing came to light, Defendants continued to make misrepresentations to investors. (*Id.* ¶¶ 249-306, 329-37.)

Plaintiffs in these actions bring claims for:[10] (1) Racketeering in Violation of N.J.S.A. § 2C:41-2(c); (2) Racketeering in Violation of N.J.S.A. § 2C:41-2(d); (3) Aiding and Abetting in Violation of N.J.S.A. § 2C:41-2(c) and (d);[11] (4) Violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 ("Section 10(b)"); and (6) Violation of Section 20(a) of Exchange Act ("Section 20(a)") (against Pearson, Schiller, and Rosiello). In

---

[10] Claims are brought against all Defendants unless otherwise specified.

[11] Counts I, II, and III fall under New Jersey's Racketeering Statute, or "N.J. RICO."

addition, Plaintiffs in *Lord Abbett* and *Boeing* bring the following claims: (1) Violation of Section 18 of the Exchange Act ("Section 18") (against Valeant, Pearson, Schiller, and Rosiello); (2) Common Law Fraud; and (3) Negligent Misrepresentation (against the Valeant Defendants).

The Valeant Defendants, Pearson, and Schiller move to dismiss the N.J. RICO, Section 18, and common law fraud and negligent misrepresentation claims in each of the Complaints. PwC moves to dismiss all claims against it. Carro moves to dismiss all claims against her in *Lord Abbett*, and all claims against her except the Section10(b) claims in *Mississippi* and *Boeing*.

## II.    **Legal Standard**

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812

4

F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198,

217 (3d Cir. 2002)). Additionally, the Private Securities Litigation Reform Act ("PSLRA")

requires that a securities fraud complaint "specify each statement alleged to have been misleading,

the reason or reasons why the statement is misleading, and, if an allegation regarding the statement

or omission is made on information and belief, the complaint shall state with particularity all facts

on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490

(3d Cir. 2016) (quoting *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 n.8 (3d Cir.

2006)).

III. **Discussion**

    A.    **Section 10(b) (Count IV)**

        i.    **PwC**

PwC moves to dismiss Plaintiffs' Section 10(b) counts arguing that Plaintiffs do not plead

a strong inference of PwC's scienter or motive to commit fraud. (PwC's Mot. to Dismiss 8-10,

ECF No. 59.) PwC emphasizes that in the fifty-eight paragraphs related to scienter, PwC is

mentioned only once, and it is in the context of Philidor's actions. (*Id.* at 10. ("Philidor provided

data to . . . PwC").) PwC argues that the pleadings, at most, allege negligence. The Complaints

themselves indicate that other Defendants provided PwC with incorrect information. (*Id.* at 13

(citing Compl. ¶ 337).)

Plaintiffs respond by arguing that the allegations of egregious accounting violations and

knowledge of key information give rise to a strong inference that "a reasonable accountant"

conducting Valeant's audit would have concluded that Valeant was violating GAAP. (Pl.'s Opp'n

Br. 48, ECF 83.) Plaintiffs insist that, considered together, allegations regarding the size and

seriousness of the fraud, PwC's unique position, and demonstrated consideration of information

that contained serious errors provide a strong inference that PwC's audit was "so shoddy" that it amounted to a "pretend audit." (*Id.* at 53.)

The Third Circuit has allowed a RICO claim to survive against an outside auditor where the complaint alleged egregious violations of accounting principles and standards "coupled with allegations that significant 'red flags' were ignored" and the allegations were pled with particularity. *Sun v. Han*, 2015 WL 9304542, at *13 (D.N.J. Dec. 21, 2015) (citing *In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d at 279-80). Courts that have addressed this issue, however, have found that pleading scienter against an outside auditor is "particularly demanding." *Athale v. SinoTech Energy Ltd.*, No. 11-5831, 2014 WL 687218, at *5 (S.D.N.Y. Feb. 21, 2014) (internal quotation omitted). A strong inference of scienter may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud[;] or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004)).

Here, even taking Plaintiffs' allegations as true, the allegations in the Complaints do not establish either. The Complaints sound in negligence, not fraud—and certainly do not support the strong inference of scienter required for a Section 10(b) claim. Plaintiffs' own argument relies on what a "reasonable accountant" should have concluded (Pls.' Opp'n Br. 53.), clearly suggesting a negligence standard—not "conscious misbehavior or recklessness." Further, to the extent Plaintiffs argue that PwC had a motive and opportunity to commit fraud, the only "motive" identified in the Complaints is PwC's receipt of fees for completion of the audit. The Third Circuit has held that the payment of professional fees, without more, is clearly insufficient to establish a

Section 10(b) claim. *Klein*, 147 F. App'x at 277. Accordingly, the Court grants PwC's motion to dismiss Count IV in each of the Complaints.[12]

### ii. Carro (*Lord Abbett* only)

Carro also moves to dismiss the Section 10(b) claim against her in *Lord Abbett*. Carro's argument is essentially that because her alleged misstatements on the October 2015 call occurred after the *Lord Abbett* Plaintiffs purchased the notes, there can be no reliance, and, therefore, the claim must be dismissed.[13] Plaintiffs respond that they pled several other actions by Carro, including that Carro was involved in the drafting, preparation, and/or approval of the 2014 10-K and 10-Qs that were filed prior to the *Lord Abbett* purchases. Plaintiffs argue, therefore, that they have sufficiently pled reliance. (Pl.'s Opp'n Br. 24, n.17.)

The Court finds that the conduct alleged as to Carro, even without the two misstatements allegedly made on an October call, are sufficient to survive the motions to dismiss. (*See* Compl. ¶¶ 322 (pleading Carro's involvement in Valeant's allegedly misleading financial statements).) Under the fraud-on-the-market presumption, the price of a security is "assumed to have incorporated the alleged misrepresentations" and a Section 10(b) plaintiff "is entitled to a presumption of reliance if he bought securities in an efficient market." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 373 (3d Cir. 2002). In this situation, therefore, considering the acts alleged in the Complaints, and using the fraud-on-the-market presumption, it would be premature to dismiss

---

[12] For this reason, the Court also finds that the Common Law Fraud claim against PwC is not sufficient to withstand the motion to dismiss, and Count VII against PwC in *Lord Abbett* and *Boeing* are also dismissed.

[13] The *Lord Abbett* Plaintiffs purchased securities between March 1, 2013 and October 5, 2015. The phone call identified by Plaintiffs where Carro allegedly made misrepresentations to investors occurred on October 26, 2015. (*Id.* at 13.)

the Section 10(b) claim against Carro at this stage of the proceedings. Carro's motion, therefore, is denied.

## B.    New Jersey RICO Claims (Counts I, II, and III)

Plaintiffs assert three N.J. RICO counts in each Complaint.  Plaintiffs claim Defendants violated N.J.S.A. § 2C:41-2(c) and (d) and aided and abetted violations of these subsections.  The relevant statute provides as follows:

> c. It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> d. It shall be unlawful for any person to conspire as defined in N.J.S. 2C:5-2, to violate any of the provisions of this section.

N.J.S.A. § 2C:41-2.[14]

### i.    **Valeant Defendants**

#### a.    N.J. RICO Section C

To prove a violation under N.J.S.A. § 2C:41-2(c), Plaintiffs must show: "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity." *State v. Ball*, 141 N.J. 142, 181 (1995) (citing *State v. Ball*, 268 N.J. Super. 72, 99 (N.J. App. Div. 1993)).  Defendants argue that Plaintiffs have failed to sufficiently state a claim.

---

[14] None of the Defendants argue that the N.J. RICO claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA").  As such, the Court will not analyze whether SLUSA impacts the N.J. RICO claims.

1.   Existence of an Enterprise

The Valeant Defendants argue that Plaintiffs fail to sufficiently plead the existence of an enterprise for purposes of N.J. RICO because Plaintiffs have not pled an enterprise that exists separate and apart from the conduct in which it engaged or an "ascertainable structure" of the enterprise. (Valeant's Moving Br. 10, 12-14, ECF No. 61.) Plaintiffs respond that Defendants misconstrue the relevant legal precedent, as N.J. RICO does not require an enterprise to stand apart from the pattern of racketeering activity or the enterprise to have an ascertainable structure. (Pls.' Opp'n Br. 17, ECF No. 83.)

N.J. RICO statute defines "enterprise" broadly as "any individual, sole proprietorship, partnership, corporation, business or charitable trust, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities." N.J.S.A. § 2C:41-1. In *Ball*, the New Jersey Supreme Court addressed the requirements of an enterprise. After a thorough review of the N.J. RICO statute, the federal RICO statute, the legislative history, and the relevant case law, the New Jersey Supreme Court held that the N.J. RICO statute should be broadly construed. *Ball*, 141 N.J. at 160-61. The Court found that while the "enterprise" requirement is separate and apart from the "pattern of racketeering activity," "evidence that serves to establish such an enterprise need not be distinct or different from the proof that establishes the pattern of racketeering activity." *Id.* at 162. "The organization of an enterprise need not feature an ascertainable structure or a structure with a particular configuration." *Id*. Instead, "[t]he division of labor and the separation of functions undertaken by the participants serve as the distinguishing marks of the 'enterprise.'" *Id*. In other words, the fact that the group "divide[s] and assemble[s]" its tasks, necessarily requires the "high degree of planning, cooperation and coordination" to

constitute an organization. *Id.* While an "ascertainable structure" is sufficient to meet this standard, it is not the only method by which Plaintiffs can establish an enterprise. *Id.* at 162-63 ("Apart from an organization's structure . . . the focus of the evidence must be on the number of people involved and their knowledge of the objectives of their association, how the participants associated with each other, whether the participants each performed discrete roles in carrying out the scheme, the level of planning involved, how decisions were made, the coordination involved in implementing decisions, and how frequently the group engaged in incidents or committed acts of racketeering activity, and the length of time between them.").

Reviewing the Complaint against the backdrop of the New Jersey Supreme Court's analysis, the Court finds that Plaintiffs have sufficiently alleged N.J. RICO claims under section c against the Valeant Defendants. The Complaints specifically allege the participants in the enterprise (Compl. ¶¶ 41-77) who acted over the course of eight years (*id.*) in furtherance of the group's ongoing efforts to deceive the public for the benefit of the company and themselves (*see, e.g., id.* ¶ 5). Plaintiffs include allegations of specific acts committed by each Valeant Defendant in furtherance of the objective, actions taken to effectuate or conceal these efforts, and knowledge of the participation. (*Id.* ¶¶ 41-77.) Based on a review of the pleadings and the Court's reading of the *Ball* requirements, therefore, the Court finds that Plaintiffs have sufficiently pled the existence of an "enterprise" to survive a motion to dismiss.

### 2. Pattern of Racketeering Activity

To be liable under N.J. RICO, a defendant's involvement in an enterprise must be accomplished "through a pattern of racketeering activity." N.J.S.A. § 2C:41-2(c). A "pattern of racketeering activity," requires:

> (1) Engaging in at least two incidents of racketeering conduct one
> of which shall have occurred after the effective date of this act and

the last of which shall have occurred within 10 years (excluding any period of imprisonment) after a prior incident of racketeering activity; and

(2) A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

N.J.S.A. § 2C:41-1d.

Carro and Schiller each challenge whether Plaintiffs have alleged a pattern or practice of racketeering activity because Plaintiffs have not pled that Carro and Schiller personally committed two predicate acts. (Carro's Moving Br. 5, ECF No. 60; Schiller's Moving Br. 4, ECF No. 58.) Carro argues that the only factual allegations as to Carro are a pair of false statements during an October 26, 2015 conference call, which counts as one act, and the minimum requirement for a pattern of racketeering is two predicate acts. (*Id*. at 6.) Carro argues that any other allegations about her conduct are improperly group pled and cannot sufficiently establish two predicate acts. (*Id*. at 7-10.) Similarly, Schiller argues that Plaintiffs' claims are not pled with particularity and do not allege facts describing how his statements were fraudulent. (Schiller's Moving Br. 4.)

Plaintiffs respond that because Defendants "concede" viable Section 10(b) claims by not moving to dismiss them, there are sufficient predicate acts. (Pls.' Opp'n Br. 22, ECF No. 83.) While the Court recognizes that Defendants have not made any concessions regarding these claims by not moving to dismiss them, *see Balter v. United States*, 172 F. App'x 401, 403 (3d Cir. 2006), as the Section 10(b) claims are not challenged here,[15] and the Court, in any event, would find

---

[15] Although Carro challenged the Section 10(b) claim against her in *Lord Abbett*, the Court denied her motion on this ground, as discussed above.

sufficient allegations to survive such a challenge,[16] there are, at least for purposes of this motion, sufficiently alleged Section 10(b) claims. In addition, Plaintiffs pointed to twenty-two misstatements by Schiller and four by Carro. (Pls.' Opp'n Br. 22.) Plaintiffs also allege that Schiller signed Sarbanes-Oxley ("SOX") certifications containing misrepresentations and Carro oversaw preparation of financial reports and made misrepresentations on conference calls. (*Id.* at 24 (citing Compl. ¶¶ 38, 53, 277, 337, 347).) Given the scope of these allegations, and as a Section 10(b) claim is undoubtedly a "predicate act" under N.J. RICO, N.J.S.A. § 2C:41-1(a)(1)(p), the Court finds that Plaintiffs have alleged the requisite pattern of racketeering activity.

b.    N.J. RICO Conspiracy (Section D)

An N.J. RICO conspiracy has two elements: (1) an agreement to violate RICO and (2) the existence of an enterprise. *Ball*, 141 N.J. at 176. The enterprise issue was discussed above, and, therefore, the Court's analysis will focus on the agreement. The agreement requirement has two sub-parts: (1) an agreement to participate in the conduct of the enterprise; and (2) an agreement to the commission of at least two predicate acts. *Id.* "If either agreement is lacking, the defendant has not embraced the objective of the conspiracy—the substantive violation of the RICO Act— that is required for any conspiracy." *Id.* While a defendant must "have some minimal knowledge of the extent of the enterprise," *id.* (citing *United States v. Diecidue*, 603 F.2d 535, 556 (5th Cir. 1979), *cert. denied*, 445 U.S. 946 and 446 U.S. 912 (1980)), [i]t is sufficient if a defendant knows 'the general nature of the enterprise and know[s] that the enterprise extends beyond his individual role.'" *Id.* (citing *United States v. Eufrasio*, 935 F.2d 553, 577 n.29 (3d Cir. 1991)). As to the agreement to commit two predicate acts, the New Jersey Supreme Court analyzed cases

---

[16] *See In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-07658, 2017 WL 1658822, at *12-13 (D.N.J. Apr. 28, 2017)

disagreeing on whether the participant must agree to commit two predicate acts or whether it is sufficient for the participant to agree that others will commit the acts. *Ball*, 141 N.J. at 177-81. The New Jersey Supreme Court found that requiring every participant to commit two acts would be an overly strict reading of the statute that could potentially insulate wrongdoers that were otherwise involved in the conspiracy, but did not personally agree to commit two acts. *Id.* at 181.

Defendants argue Plaintiffs do not sufficiently plead an agreement to violate N.J. RICO. (Valeant's Moving Br. 17, ECF No. 61-1.) In addition, Schiller and Carro argue that the allegations against them are improperly group-pled. (Carro's Moving Br. 10; Schiller's Moving Br. 5.) Plaintiffs respond that the pleadings sufficiently demonstrate that the Valeant Defendants purposefully instituted a deceptive business model and made concerted efforts to conceal it from investors through deceptive accounting measures and misrepresentations. (Pls.' Opp'n Br. 33 (citing Compl. ¶¶ 92-99, 115-16, 141-93, 214-26, 249-97).) Plaintiffs assert they have alleged collective and concerted action that is an objective manifestation of the agreement to conspire and the claims should not be dismissed at this time because fact intensive inquiries are necessary to determine liability. (*Id.* at 34-36.)

Claims for conspiracy are held to the pleadings standard under Rule 8 rather than the stringent pleading standard under Rule 9(b). *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, 2013 WL 1431680, at *13 (D.N.J. Apr. 9, 2013) (citing *Miller v. P.G. Lewis & Assoc.*, No. 05-5641, 2007 WL 316446, at *4 (D.N.J. Jan. 30, 2007)). After thorough review of the pleadings, the Court finds that the Plaintiffs have sufficiently pled an N.J. RICO conspiracy count against each Valeant Defendant. The Complaints provide ample allegations regarding the Valeant Defendants' agreement to further the enterprise. For example, Plaintiffs allege that Valeant "pursued a deliberate strategy—devised at the highest level of the company, but hidden from

investors" (Compl. ¶153(a)), which relied on inaccurate financial statements (*id.* ¶ 153(d), (g), (i)) and a secret network of pharmacies (*id.* ¶ 153(e)) advanced through the conduct of the individual Valeant Defendants (*id.* ¶¶ 151-243). Further, a complete analysis as to the knowledge and agreement of each individual will be more appropriate at summary judgment. At this early stage of the proceedings, and evaluating the pleadings against the Rule 8(a) standard, the Court finds that the pleadings are sufficient.

### c.     Aiding and Abetting

Defendants move to dismiss Plaintiffs' aiding and abetting N.J. RICO counts. Three elements are required for aiding and abetting liability: (1) that an independent wrong exists; (2) that the aider or abettor knows of that wrong's existence; and (3) that substantial assistance be given in effecting that wrong. *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 162-63 (3d Cir. 1973). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner*, 459 F.3d at 295.

For the same reasons the Court is permitting the substantive RICO claims to proceed, the Court also finds that the NJ RICO claims should survive for purposes of this motion. It would be premature to determine the aiding and abetting claims at this early stage of the proceedings. Valeant Defendants' motions on these counts, therefore, are denied.

### d.     RICO Injury as to Notes

New Jersey allows any person damaged by an N.J. RICO violation to bring a claim. N.J.S.A. § 2C:41-4. The N.J. RICO violation, however, must be the "but for" and proximate cause of the injuries. *Fimbel v. Fimbel Door Co.*, 2014 WL 6992004, at *9 (D.N.J. Dec. 10, 2014) (citing *Interchange State Bank v. Veglia*, 668 A. 2d 465, 472 (N.J. App. Div. 1995)). The Valeant Defendants argue that Plaintiffs have not alleged N.J. RICO injuries related to the Valeant notes

because there is no allegation that Valeant failed to make interest payments or defaulted on the notes.[17] (Valeant's Moving Br. 15.) The Valeant Defendants also argue that Plaintiffs are not direct purchasers of Valeant notes and, therefore, cannot allege a viable RICO injury. (*Id.* at 16 n.8.) Plaintiffs respond that it is sufficient that they alleged they were harmed by the decrease in value of the notes. (*Id.* at 29.) As to the direct purchaser argument, Plaintiffs respond that the cases cited by Defendants discuss a standing rule grounded in antitrust, not RICO. (Pls.' Opp'n Br. 29.)

Here, the Court finds that, at this early stage of the proceedings, it would be premature to dismiss claims predicated on the purchases of the notes based on lack of injury. Plaintiffs pled that they purchased the notes at inflated prices due to the conduct of Defendants. (*See, e.g.*, Compl. ¶ 392.) In addition, the issue of whether any particular plaintiff was an original or downstream purchaser, or whether there is standing based on specific purchases of an individual Plaintiff, should be reviewed with the benefit of a full discovery record. Defendants' motion on this ground is, therefore, denied.

### ii. **PwC**

PwC moves to dismiss all of the N.J. RICO claims against it. PwC argues that Plaintiffs fail to plead PwC's knowing participation in an enterprise, a pattern of racketeering activity by PwC, the existence of an unlawful agreement that included PwC, or that PwC's assistance was substantial. (PwC's Moving Br. 15-21.) PwC argues that Plaintiffs' claims are implausible, conclusory, and unsupported by factual allegations that would explain why an auditor would join

---

[17] The entirety of the *Lord Abbett* Complaint is premised on the purchase of Valeant notes. *Mississippi* and *Boeing* involve both notes and securities.

a criminal enterprise. (*Id*. at 16.) PwC argues that the complaints are completely devoid of allegations against it that would support any of the three RICO counts against it. The Court agrees.

Plaintiffs' factual allegations against PwC essentially amount to PwC certifying Valeant's 2013 and 2014 Forms 10-K and issuing an audit report in February 2015 with misrepresentations that PwC "was aware, or should have been aware [of]." (Compl. ¶ 247.) This allegation alone undermines Plaintiffs' claim in the briefing that PwC was an active participant motivated to further the goals of the conspiracy. As discussed above in connection with the Section 10(b) claims, the allegations against PwC sound in negligence. Here, the Complaints do not establish a plausible basis for PwC's participation in an "enterprise" under NJ RICO, nor do they establish an agreement by PwC to participate in the enterprise or a conspiracy. Plaintiffs do not set forth any facts that plausibly explain PwC's participation in the enterprise. To the contrary, Plaintiffs only plead that PwC performed the audit in order to be paid its professional fees and should have recognized potential issues with the financial records. PwC's motions as to each of the NJ RICO claims against it, therefore, are dismissed, without prejudice.

### C.     Section 18 Claims

Section 18 creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the Securities and Exchange Commission. 15 U.S.C. § 78r(a). A claim under Section 18 must be filed within one year after the discovery of the facts constituting the cause of action and within three years after the cause of action accrues.

Valeant argues that the *Lord Abbett* and *Boeing* Plaintiffs' Section 18 claims are untimely.[18] The *Lord Abbett* Plaintiffs filed their Complaint on August 23, 2017 for purchases that occurred between March 1, 2014 and October 5, 2015. (Compl. ¶ 33.) The *Boeing* Plaintiffs filed their Complaint on September 28, 2017 for purchases that occurred between January 10, 2015 and March 23, 2016. (Boeing Compl. ¶ 19.) Defendants argue that these purchases were made outside of the three year statue limitations period and/or more than a year after discovery of the facts that led to the claim. Plaintiffs respond that SOX extends the time to file a Section 18 claim.

SOX provides a two-year statute of limitations and five-year statute of repose for private rights of action involving claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . of the Securities Exchange Act of 1934." 28 U.S.C. § 1658(b). Whether this provision overrides the Section 18 limitations period in 15 U.S.C. § 78r(c) is unresolved among federal courts. There is no Third Circuit precedent that has directly addressed this issue. District Courts in the District of New Jersey and the Eastern District of Pennsylvania have held that SOX does not apply to Section 18 because fraudulent intent is not required to sustain a claim. *In re Able Labs. Sec. Litig.*, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) (SOX inapplicable where fraudulent intent is not required); *WM High Yield Fund v. O'Hanlon*, 2005 WL 6788446 (E.D. Pa. May 13, 2005) (SOX does not apply where no proof of

---

[18] Valeant also argues that Plaintiffs fail to meet Section 18's stringent reliance standard. (Valeant's Moving Br. 21.) The Court rejected this argument in a related matter on similar pleadings, and Valeant did not raise this issue again on reply, presumably in light of these decisions. *See T. Rowe Price Growth Stock Fund, Inc., v. Valeant Pharms. Int'l, Inc.*, No. 16-5034, 2018 WL 395730 (D.N.J. Jan. 12, 2018); *Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*, No. 16-7321, 2018 WL 406046 (D.N.J. Jan. 12, 2018). To the extent that Valeant has not abandoned this argument, the motion to dismiss on this ground is denied, as the Court finds Plaintiffs have sufficiently alleged reliance under Section 18.

fraud is required). The Third Circuit has similarly declined to extend SOX to Section 14 claims because of the lack of a scienter requirement. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007).

The Second Circuit recently reached a different conclusion than the two District Courts in this circuit that have considered the issue. In *Deklab County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016), the Second Circuit held that SOX's expanded limitations period applied to Section 18 claims. *Id.* The Court noted that Section 18 does not impose liability if the person sued demonstrates that "he acted in good faith and had no knowledge that such statement was false or misleading" and, therefore, something more than negligence is required for Section 18 liability. *Id.* (citing 15 U.S.C. § 78r(a)). Applying this logic, the Second Circuit found that SOX applies to Section 18 claims and overlaid the existing limitation periods with the longer provision in § 1658(b).

After carefully analyzing the relevant case law, the Court finds the Second Circuit's decision persuasive and holds that SOX applies to Section 18. Although the Court is cognizant of the District of New Jersey and Eastern District of Pennsylvania decisions finding to the contrary, these decisions pre-date the Second Circuit's direct analysis and rely on a Third Circuit decision analyzing Section 14(a). Section 14(a), however, is different from Section 18 in that mere negligence is sufficient for liability to attach to a misstatement. *Herskowitz v. Nutri/Sys., Inc.*, 857 F.2d 179, 190 (3d Cir. 1988) ("The test under section 14(a) is materiality of the disclosure. A material misrepresentation even when made negligently rather than intentionally or recklessly, can still inflict the anticipated harm, and is thus deemed actionable.") (internal citation omitted). Section 18 is different because a Section 18 mistake made in good faith or without knowledge of

a statement's falsity is immune from liability.[19]  The Court agrees with the rationale of the Second

Circuit and, therefore, denies Defendants' motions regarding the timeliness of the Section 18

claims.  Accordingly, the remainder of Defendants' arguments regarding the timeliness issue and

when the limitations periods begin to run are moot.[20]

### D.    Negligent Misrepresentation and Fraud

Defendants move to dismiss the state common law claims arguing that they are preempted

by the Securities Litigation Uniform Standards Act ("SLUSA").  SLUSA preempts[21] any claim

that "(1) make[s] use of a procedural vehicle akin to a class action, and (2) allege[s] a

misrepresentation or deceptive device in connection with a securities trade." *LaSala v. Bordier et*

*Cie*, 519 F.3d 121, 128 (3d Cir. 2008).  Plaintiffs do not contest that this is a "covered class action"

(Pls.' Opp'n Br. 44, n.37), but argue that the securities at issue are not "covered securities" and

---

[19] Section 18 provides for liability to attach for false statements in filings "unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. 15 U.S.C. § 78r.

[20] Schiller also argues that any Section 18 claims as to him regarding the second and third quarter reports of 2015 should be dismissed because he did not execute these filings because they were made after he had stepped down as CFO in June 2015 (Schiller's Moving Br. 8) and that Section 18 claims based on 10-Q reports are exempt from liability due to the safe harbor of "financial information" (*id.* at 7). In *Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*, No. 16-7321, 2018 WL 406046, at *5 (D.N.J. Jan. 12, 2018), the Court rejected these arguments finding that, at this early stage of the litigation, it is premature to rule on these fact intensive issues. The Court reaches the same conclusion here.

[21] SLUSA preemption is only as to the *procedural* aspect of the claims. As the Supreme Court has explained, the "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006).

therefore, SLUSA preemption does not apply (Pls.' Opp'n Br. 44-45 (citing 15 U.S.C. 78bb(f)(5)(E)).

SLUSA bars state law claims in a class actions alleging "a misrepresentation or omission of a material fact *in connection with* the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (emphasis added). The Supreme Court has addressed the scope of SLUSA preemption in two cases relevant to our analysis. In the first, *Dabit*, the Supreme Court has interpreted the "in connection with" language to apply SLUSA preemption broadly. *Dabit*, 547 U.S. at 71, 74 ("The background, the text, and the purpose of SLUSA's pre-emption provision all support the broader interpretation . . ."). The Supreme Court has held that "it is enough that the fraud alleged 'coincide' with a securities transaction" *Dabit*, 547 U.S. at 85 (citing *United States v. O'Hagan*, 521 U.S. 642, 651 (1997)).

In the second case, *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014), the Court addressed the purchase of an uncovered security. In *Troice*, the plaintiffs purchased uncovered debt securities based on a misrepresentation that they were "backed" by covered securities. *Id.* at 380. It was later revealed, however, that the issuer of the uncovered debt security did not actually hold any covered securities. *Id.* at 384. The Supreme Court found that SLUSA did not preempt the state law claims. The Supreme Court explained that this result was necessary because "[a]n interpretation that insists upon a *material connection with a transaction in a covered security* is consistent with [SLUSA's] basic focus." *Id.* at 387 (emphasis added). In *Troice*, unlike in the instant case, the fraudulent conduct did not impact any covered security. Here, however, even assuming that the notes at issue are uncovered securities, the underlying fraud involves a "covered" security, which subsequently impacted the price of the notes at issue. (Compl. ¶¶ 6, 33.) Plaintiffs here were allegedly defrauded based on misrepresentations regarding Valeant's common

stock, which affected the note purchases and the prices at which they were purchased. The *Lord Abbett* and *Boeing* Plaintiffs specifically allege that they purchased the notes in reliance on the fraudulent representations that caused Valeant's common stock price to soar. (*See* Compl. ¶¶ 6, 390, 464). In other words, Plaintiffs' state law claims stemming from the note purchases would not exist but for the fraud that Defendants allegedly perpetrated in relation to the stock price. In *Troice*, however, the fraudulent scheme did not affect covered securities in the same way. The *Troice* plaintiffs were induced to buy uncovered debts based on a fraudulent claim that defendant owned covered securities that would back their purchases. *Troice*, 571 U.S. at 381. The Supreme Court found this type of misrepresentation had no "material connection with a transaction in a covered security." *Id.* at 387. Whereas, the plaintiffs in *Troice* could not link their purchase to any "transactions in covered securities," *id.*, all of Plaintiffs' claims here originate from fraudulent statements that caused Valeant stock to trade at inflated prices.

The Court finds, therefore, that the Complaints allege a misrepresentation or omission of material fact connected to Valeant common stock sufficient to trigger SLUSA. 15 U.S.C. § 78bb(f)(5)(E). Plaintiffs' negligent misrepresentation and fraud claims are inextricably linked to an alleged fraud that caused the price of a "covered security," Valeant stock, to artificially inflate, which directly impacted the notes. This is exactly the type of scheme that SLUSA was intended to preempt. "Congress passed SLUSA to close a loophole that allowed class-action litigants to avoid the heightened pleading standards for federal securities-fraud claims by filing suits under state law." *Luis v. RBC Capital Mkts., LLC*, No. 16-03873, 2017 WL 4150872, at *2 (D. Minn. Sept. 18, 2017). SLUSA is intended to be expansive and "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Dabit*, 547 U.S. at 78. "[C]ourts should err on the side of finding

in favor of preclusion under SLUSA when the issue is a close one." *Luis*, 2017 WL 4150872, at *3. Allowing Plaintiffs to proceed on their state law negligent misrepresentation and fraud claims, therefore, would directly contravene Congress's intent behind SLUSA's preemption provision as interpreted by the Supreme Court in *Dabit*.

Accordingly, the Court finds that the *Lord Abbett* and *Boeing* Plaintiffs' state common law claims are preempted under SLUSA.

## IV.   Conclusion

For the reasons set forth above, PwC's motions to dismiss the Section 10(b) claims against it are **GRANTED**; Carro's Motion to Dismiss the Section 10(b) claim in *Lord Abbett* is **DENIED**; Valeant Defendants' motions to dismiss the RICO claims are **DENIED**; PwC's motions to dismiss the RICO claims are **GRANTED**; Defendants' motions to dismiss the Section 18 claims are **DENIED**, and Defendants' motions to dismiss the common law fraud and negligent misrepresentation claims are **GRANTED**. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2018